Susan Diane VANDERLINDEN, et al., Plaintiffs,

v.

STATE OF KANSAS, et al., Defendants.

Gary Lee McCOLPIN, Plaintiff,

v.

Joan FINNEY, et al., Defendants.

Robert HUTCHCRAFT, et al., Plaintiffs,

v.

I & I PETERS, et al., Defendants.

Nos. 92–1044–DES, 91–3342–DES and 92–3230–DES.

United States District Court, D. Kansas.

Jan. 24, 1995.

Roger L. Falk, Law Office of Roger L. Falk, Wichita, KS, Joseph D. Johnson, Joseph D. Johnson, Chtd., Topeka, KS, Daniel E. Monnat, Monnat & Spurrier, Chartered, Wichita, KS, Linda L. Eckelman, Dodge City, KS, for Susan Diane Vanderlinden.

Roger L. Falk, Law Office of Roger L. Falk, Wichita, KS, for James E. Taylor.

Martha M. Snyder, Topeka, KS, for State of Kan., Kan. Bureau of Investigation, David R. McKune, Rex Prior.

Gary Lee McColpin, pro se.

George VanBebber, pro se.

Thomas Harold Kennon, pro se.

Kristy L. Hiebert, Office of the Atty. Gen., Topeka, KS, for Joan Finney, Gary Stotts, Richard Koerner, Raymond (NMI) Roberts, David R. McKune, Rudy Stupar, John Callison, Randy Buford, Phyllis Warder, Robert Davenport.

Robert J. Nugent, Office of Revisor of Statutes, Topeka, KS, Robert A. Coldsnow, Topeka, KS, for Paul "Bud" Burke, Marvin W. Barkis.

Robert R. Hutchcraft, pro se.

William Frank Schlicher, pro se.

James Edward Roberts, Jr., pro se.

David Woodward, pro se.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on three consolidated actions challenging the constitutionality and execution of Kansas Statutes Annotated (K.S.A.) 21–2511, which provides for the collection of blood and saliva specimens from certain convicted felons for use by the Kansas Bureau of Investigation in preparing "genetic marker groupings," primarily deoxyribonucleic acid (DNA) analyses, to detect and deter the commission of crimes by recidivists. Over 2,600 Kansas inmates are subject to the provisions of K.S.A. 21–2511, and by June 1, 1993, the Kansas Department of Corrections had collected specimens from 2,657 inmates; approximately six of these collections were performed forcibly.

The court heard argument in this matter, and the parties were permitted to submit additional briefs. Only the defendants have submitted a brief. Having considered the record, the court makes the following findings and order.

### Procedural history

The plaintiffs in Case No. 92–1044, Susan Vanderlinden and James Taylor, commenced this action in the United States District Court for the District of Kansas at Wichita, Kansas. The matter was transferred to the undersigned for consolidation with two actions filed by inmates proceeding pro se, Case No. 91–3342 and Case No. 92–3230.

After determining that the three actions concern a common question of law, the court issued an Order consolidating the three matters.

The plaintiffs challenge the Kansas statute on several grounds, claiming it violates the Fourth Amendment, impermissibly infringes on inmates' privacy interests, violates procedural due process, constitutes cruel and unusual punishment, violates the ex post facto clause, is a bill of attainder, and violates equal protection.

### Discussion

#### Background

Forensic DNA typing has rapidly gained approval as admissible, even decisive, evidence concerning tissue material left at a crime scene. Although the scientific debate on the reliability of such evidence remains unsettled, the use of DNA typing has been approved by the Kansas Supreme Court. See State v. Dykes, 847 P.2d 1214, 252 Kan. 556 (1992) (DNA profiling meets standard of general acceptance in scientific community but may be inadmissible on grounds of relevancy, prejudice, contamination, and the like); Smith v. Deppish, 807 P.2d 144, 248 Kan. 217 (1991) (DNA print testing and Restriction Fragment Link Polymorphism Analysis admissible, recognized as reliable and generally accepted).

Statutes permitting the collection and analysis of blood and saliva specimens from convicted felons have been widely adopted in recent years, and over twenty states now have such laws. Although the body of case law which has developed in response to challenges to these laws is small, it reflects a uniform view that the statutes are generally valid. In the earliest decision, Jones v. Murray, 962 F.2d 302 (4th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 472, 121 L.Ed.2d 378 (1992), the United States Court of Appeals for the Fourth Circuit upheld a 1990 Virginia statute requiring incarcerated felons to provide blood specimens for the creation of a DNA databank to assist law enforcement. The Jones court found that the statute did not violate the Fourth Amendment, but it rejected on ex post facto grounds the portion

of the statute that provided that submission to the blood test could be required as a condition of release on mandatory parole.

Following *Jones,* the United States District Court for the Western District of Virginia rejected inmates' challenge on ex post facto and due process grounds to Virginia prison regulations which authorized the withholding of good conduct time from inmates who refused to provide blood samples for DNA analysis. *Ewell v. Murray,* 813 F.Supp. 1180 (W.D.Va.1993).

Federal courts in North Carolina and Washington have also upheld state statutes permitting the collection of blood samples for DNA identification and blood grouping tests from inmates convicted of certain violent offenses and sex offenses. *Sanders v. Coman,* 864 F.Supp. 496 (E.D.N.C.1994); *Ryncarz v. Eikenberry,* 824 F.Supp. 1493 (E.D.Wash. 1993).

*The Kansas statute*

Kansas statute 21–2511 applies to those convicted, or adjudicated as juveniles, of murder or certain sex offenses and provides for the submission of blood and saliva specimens to the Kansas Bureau of Investigation. Under the statute, the samples are to be gathered by persons with specified medical training. The results of genetic analyses on these samples are to be maintained by the Kansas Bureau of Investigation as the central repository, and the information may be disseminated only to law enforcement officers and prosecutorial agencies.

■ The court's analysis in the present action begins from the principle that a state statute is presumed constitutional. *Eaton v. Jarvis,* 965 F.2d 922, 929 (10th Cir.1992) (citing *McDonald v. Board of Election Comm'rs,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969)).

■ Plaintiffs first argue the Kansas statute violates the Fourth Amendment by permitting the unreasonable search and seizure of an inmate in the absence of any individualized suspicion which might justify the intrusion.

■ It is settled, and the parties agree, that a blood test is a search. *Schmerber v.* *California,* 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966) (state could search driver suspected of drunken driving by performing blood test; such a test is "a commonplace in these days of periodic physical examinations"). The relevant determination, then, is whether the sample gathering is a reasonable search under the circumstances. Defendants argue the balance must be struck in favor of the government, given the public interest in law enforcement, while the plaintiffs contend the search is unreasonable as it is unsupported by any particularized suspicion warranting the intrusion involved.

The court believes the requirement of individualized suspicion urged by the plaintiffs has been rejected, at least in the context of those persons whose liberty interests have been reduced by their conviction, by the United States Supreme Court. For example, searches of inmates' prison cells are permissible under the Fourth Amendment and require no threshold of individualized suspicion. *Hudson v. Palmer,* 468 U.S. 517, 530, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393 (1984). More intrusive procedures involving detainees likewise have been found to pass muster under the Fourth Amendment. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court upheld the practice of conducting body cavity searches of pretrial detainees following contact visitation even in the absence of any particularized suspicion. While these permissible searches have been justified as necessary to preserve institutional order, a willingness to countenance intrusion to reduce recidivism can also be gleaned from the Court's decisions. *See* *Griffin v. Wisconsin,* 483 U.S. 868, 880, 107 S.Ct. 3164, 3172, 97 L.Ed.2d 709 (1987) (permitting search of probationer's home without warrant and stating probationer "is more likely than the ordinary citizen to violate the law.")

The United States Court of Appeals for the Tenth Circuit has also rejected a need for individualized suspicion in some circumstances. In *Dunn v. White,* 880 F.2d 1188 (10th Cir.1989), the Tenth Circuit considered a prisoner's challenge to a nonconsensual blood test to detect the presence of the Human Immunodeficiency Virus (HIV). After

concluding the prison had identified a significant interest which outweighed the inmate's expectation of privacy, the Court of Appeals stated:

> Although the government in these circumstances is not required to demonstrate individualized suspicion, it still must demonstrate that the search is a " 'sufficiently productive mechanism to justify [its] intrusion upon Fourth Amendment interests.' " [citations omitted]. *Dunn*, 880 F.2d at 1196.

Therefore, even if the court concludes individualized suspicion is not required, it must determine whether the search in question is reasonable. In this regard, the court finds persuasive the Fourth Circuit's analogy of the blood and saliva gathering at issue here to traditional identification techniques, such as fingerprinting. In *Jones v. Murray, supra*, the Fourth Circuit states:

> [W]hen a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it. We accept this proposition because the identification of suspects is relevant not only to solving the crime for which the suspect is arrested, but also *for maintaining a permanent record to solve other past and future crimes.* This becomes readily apparent when we consider the universal approbation of "booking" procedures that are followed for every suspect arrested for a felony, whether or not the proof of a particular suspect's crime will involve the use of fingerprint identification.... While we do not accept even this small level of intrusion for free persons without Fourth Amendment constraint [citation omitted], the same protections do not hold true for those lawfully confined to the custody of the state. As with fingerprinting, therefore, we find that the Fourth Amendment does not require an additional finding of individualized suspicion before blood can be taken from incarcerated felons for the purpose of identifying them [fn omitted]. *Jones*, 962 F.2d at 306–07.

In light of these precedents, the court finds the intrusion occasioned by the harvesting of blood and saliva samples under medically controlled circumstances from inmates convicted of certain felonies for the purpose of aiding in law enforcement is permissible under the Fourth Amendment.

 The plaintiffs next challenge the statute as an intrusion on their privacy interests. Although the source and contours of the constitutional right to privacy remain debated, it is established that the Due Process Clause of the Fourteenth Amendment affords individuals protection from government intrusion on fundamental aspects of personal privacy. *See Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973).

The United States Court of Appeals for the Tenth Circuit has discussed the right to privacy in the context of a prisoner's challenge to a nonconsensual blood test to detect the presence of HIV. In *Dunn v. White, supra*, the Court of Appeals said,

> In or out of prison, plaintiff has only a limited privacy interest in not having his blood tested. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court held that a state could constitutionally "search" a drunken driving suspect by testing his blood. ... *Schmerber* recognized society's judgment that blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity [citation omitted] ... We agree ... that plaintiff's privacy expectation in his body is further reduced by his incarceration, a fact recognized by the Supreme Court in *Wolfish*, 441 U.S. at 537, 99 S.Ct. at 1873. *Dunn*, 880 F.2d at 1194–95.

Given the diminished privacy interest of an inmate in a search of his body and the compelling interest in law enforcement advanced by the statute, the court believes the balance must again be resolved in favor of the governmental interest.

 Plaintiffs next allege their right to procedural due process has been violated by threats that upon refusal to comply with the blood draw required by the statute, an inmate will be summarily placed in restraints, subjected to the involuntary extraction of

blood, and placed in segregation for an indefinite period.

■ Because due process is a flexible concept, its requirements vary according to the context of its application. The question of procedural due process requires the court to consider whether the government has arbitrarily or otherwise improperly impacted an individual right. *Vasquez v. Cooper*, 862 F.2d 250, 254 (10th Cir.1988). " 'When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process.' " *Oklahoma Education Assoc. v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929, 936 (10th Cir.1989) (citing R. Rotunda, J. Novak, & J. Young, Treatise on Constitutional Law: Substance and Procedure, § 17.8 at 251 (1986)). In the circumstances described by plaintiffs, therefore, the legislative process itself satisfied procedural due process.

Plaintiffs specifically argue they are entitled to a hearing prior to the threat of placement in segregation. In *Dunn v. White*, *supra*, the Tenth Circuit rejected a similar claim that inmates were entitled to a hearing prior to a threatened placement in segregation prior to a mandatory blood test, noting both that the bare threat of placement in segregation did not impair a protected liberty interest and that, given the court's approval of the testing itself, a hearing could not benefit an inmate in the absence of a viable question of law or fact. 880 F.2d at 1198.

This reasoning is equally applicable to plaintiffs' claim, and the court therefore finds no deprivation of procedural due process.

■ Plaintiffs also claim the statute imposes cruel and unusual punishment. Defendants contend the statute is not penal, rather, it is intended to further a legitimate governmental interest. The eighth amendment prohibits any punishment which violates civilized standards of humanity and decency and "which is repugnant to the conscience of mankind." *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 471, 67 S.Ct. 374, 380, 91 L.Ed. 422 (1947). *See also Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 289–90, 50 L.Ed.2d 251 (1976).

■ The court's resolution of this argument depends upon its determination of whether the statute imposes punishment. Unless it is clear punishment was intended, this inquiry turns on whether an alternative purpose for the provision is reasonably identifiable and whether it appears to be excessive in light of that purpose. *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979). Here, the purpose of establishing a DNA databank has been identified, and the methods for obtaining data provided by the statute are not excessive measures in response to the purpose. Plaintiffs have not shown any use of excessive force that might arguably state a claim of cruel and unusual punishment in obtaining blood and saliva through involuntary means. The court finds the statute is not penal and that means used to enforce the statute have not been shown to be malicious or grossly disproportionate to the refusal to comply with the statutory mandate.

■ Plaintiffs also allege the statute violates the ex post facto clause of the Constitution. In general, the constitutional proscription of ex post facto laws "applies only to penal statutes which disadvantage the offender affected by them," *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990), and provides that legislatures may not retroactively change the definition of a crime nor increase the punishment for a crime. *Id.* at 43, 110 S.Ct. at 2719.

Because the court has concluded the statute is not punitive but furthers a governmental interest in law enforcement, it follows that the statute does not violate ex post facto principles. Rather, the court views the statute as furthering a significant government interest through a minimal intrusion for which few, if any, alternatives exist. Although the individual inmate may experience brief discomfort as a result of the statute, the impact of the procedure is slight and cannot be characterized as punitive. *Accord, Jones v. Murray*, 962 F.2d 302, 309 (4th Cir.1992).

■ Plaintiffs next contend the statute must be struck down as an unconstitutional bill of attainder. A bill of attainder is

"a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a jury trial." *Nixon v. Administrator, Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977).

Plaintiffs allege the Kansas Legislature, by enacting the statute, improperly usurped judicial authority and effectively imposed additional punishment upon those convicted of certain crimes without affording them the opportunity to be heard. However, the minimal intrusion imposed incident to the statute does not result in punishment for the reasons already set forth, nor does this argument consider the notice which inheres in the legislative process. The court therefore rejects this argument.

Finally, plaintiffs assert the statute denies them equal protection by imposing a burden on those convicted of certain crimes in the absence of any compelling state interest. "The Equal Protection Clause of the Fourteenth Amendment commands that no States shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)).

In evaluating legislation which allegedly denies equal protection, courts have traditionally applied either a "strict scrutiny" or "rational basis" approach. Generally, strict scrutiny applies where a fundamental right, such as privacy, marriage, voting, or suspect classification, such as one based upon race or national origin, is implicated. *City of Cleburne*, 473 U.S. at 441, 105 S.Ct. at 3255. *See also San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 17–39, 93 S.Ct. 1278, 1288–1300, 36 L.Ed.2d 16 (1973) (discussing equal protection analysis). Where a strict scrutiny analysis is warranted, the legislation should be sustained only if it is narrowly tailored to advance a compelling state interest.

Although K.S.A. 21–2511 does not implicate a suspect class, the privacy rights implicated by the statute warrant the application of strict scrutiny.

Plaintiffs argue the bodily intrusion contemplated by the statute is not supported by an existing or imminent need to maintain prison security and that the interest in facilitating future criminal investigations is so uncertain that it cannot be characterized as a compelling state interest.

Plaintiffs' argument fails to recognize the relationship between the type of crimes committed by the group identified by the statute and the likelihood of recovering DNA at the scene of a crime committed by a recidivist. Rather than imposing an improper burden on a suspect class, the Kansas statute finds its focus on that group of felons who are most likely as repeat offenders to commit the type of crime in which DNA may be left. The state interest in advancing law enforcement is significant, and while the DNA databank surely will not positively identify the perpetrator of every crime, its value should not be dismissed lightly. The court finds the statute is narrowly drawn, advances a compelling state interest, and does not violate equal protection principles.

### Conclusion

For the reasons set forth in this Memorandum and Order, the court concludes K.S.A. 21–2511 is constitutional. The plaintiffs' requests for injunctive and declaratory relief are therefore denied.

IT IS SO ORDERED.