In re William COOPER, Petitioner,

v.

James A. GAMMON, Respondent.

No. WD 52891.

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 1, 1997.

Application to Transfer Denied
May 27, 1997.

William Cooper, Moberly, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael Prichett, Asst. Atty. Gen., Jefferson City, for respondent.

## ORIGINAL PROCEEDING
## IN MANDAMUS

HANNA, Judge.

William Cooper is currently serving a life sentence for a 1981 conviction of second degree murder. The facts are simple and straight forward. On May 13, 1996, Cooper was ordered to provide a blood sample for DNA profiling analysis pursuant to §§ 650.050 to 650.057, RSMo 1994.[1] Cooper refused to comply and was given a conduct violation report for disobeying an order. He was placed in temporary administrative segregation. Two days later, he was found guilty of the conduct violation and assigned to disciplinary segregation. On June 13, 1996, Cooper was released from disciplinary segregation and assigned to administrative segregation until he agreed to submit a blood sample for DNA testing. He continues to defy the order to submit to a blood test and

remains in administrative segregation, subject to periodic hearings.

DNA profiling and analysis is found in Section 650.055, which states as follows:

> Every individual convicted in a Missouri circuit court of a felony, defined as a violent offense under chapter 565, RSMo, or as a sex offense under chapter 566, RSMo, excluding sections 566.010 and 566.020, RSMo, shall have a blood sample drawn for purposes of DNA profiling analysis before release from, or transfer to, a state correctional institution, county jail or detention facility. Any blood sample taken shall be used solely for the purpose of providing DNA or other blood grouping lists for profiling analysis and prosecution of a violent offense or a sex offense.

On June 21, 1996, Cooper filed his petition for writ of *habeas corpus* arguing that the prison official's order keeping him indefinitely in solitary confinement is a violation of his constitutional rights, state statutes, and the prison rules.

## I. WRIT OF *HABEAS CORPUS*

The state initially argues that Cooper's writ of *habeas corpus* is improper because he is challenging only his present confinement to administrative segregation and not the legality of his incarceration, which is not in dispute. A person restrained of liberty may petition for a writ of *habeas corpus* to inquire into the cause of the restraint. Rule 91.01; *State ex rel. Haley v. Groose,* 873 S.W.2d 221, 222 (Mo. banc 1994). A Rule 91 proceeding is "limited to determining the facial validity of confinement." *State ex rel. Simmons v. White,* 866 S.W.2d 443, 445 (Mo. banc 1993). However, prisoners may obtain *habeas corpus* review of prison conditions that constitute cruel and unusual punishment, even though the detention is legal, *McIntosh v. Haynes,* 545 S.W.2d 647, 652 (Mo. banc 1977); *Haley,* 873 S.W.2d at 223, because a prisoner has a fundamental right to be free from cruel and unusual punish-

---

1. Sections 650.050, 650.053, and 650.055, RSMo 1994, were repealed by the Missouri 88th General Assembly, Second Session, 1996 and new sections 650.050, 650.052, and 650.055 were enacted in Senate Bill 578. 1996 Mo. SB

578. Because the substantive portions pertaining to Cooper's petition are essentially the same in the amended version of the statute, all references will be to RSMo 1994 unless otherwise noted.

ment. U.S. CONST. amend. VIII; MO. CONST. art. I, § 21.

Cooper does not challenge the legality of his incarceration for second degree murder. Instead, his complaint is directed at his confinement in administrative segregation. In *McIntosh*, the court cautioned that the department of corrections was under the responsibility of the executive branch of government, not the judicial branch, and "that courts will not interfere with the conduct, management, and disciplinary control of this type of institution except in extreme cases." *McIntosh*, 545 S.W.2d at 652–53.

■ In *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), the court described confinement in a prison to be violative of Eighth Amendment rights to be free from cruel and unusual punishment if the conditions involve wanton and unnecessary infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. There must be "[e]xtreme deprivations" to make out a condition of confinement claim. "[T]he deprivation alleged must be, objectively, 'sufficiently serious;' ... a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (citations omitted). Also, the prisoner must show a culpable state of mind on the part of the prison officials. *Id.* He must prove that the prison official acted with deliberate indifference to the inmate's health or safety. *Id.*

■ While Cooper alleges that his confinement in solitary constitutes cruel and unusual punishment, his complaint is truly directed at § 650.055, the statute requiring him to submit to a DNA profiling analysis. The substance of the requested relief goes to the legality of the state's right to take a blood sample. Cooper's petition for writ of *habeas corpus* falls short of a claim that his confinement in administrative confinement constitutes cruel and unusual punishment. His petition, on its face, shows that his confinement is the result of his refusal to obey an official's order, based on a state statute, which is presumptively constitutionally valid.

*See Herndon v. Tuhey*, 857 S.W.2d 203, 207 (Mo. banc 1993). Therefore, *habeas* is not the appropriate remedy. *Haley*, 873 S.W.2d at 223.

■ However, a broad reading of the petition shows a cause of action calling for review of the allegations. In *Haley*, the Missouri Supreme Court treated Haley's petition for *habeas corpus* as a petition for mandamus. *Id.* Review of Cooper's claim, whether in mandamus or prohibition, should not be denied because the petition has been mislabeled. The circumstances presented by the petition are such that the interests of justice would not be served by dismissal of this action. *State ex rel Todd v. Romines*, 806 S.W.2d 690, 691 (Mo.App.1991). Consequently, we will treat Cooper's petition as one attempting to prohibit both the prison officials from proceeding with the DNA testing and Cooper's confinement in administrative segregation.

## II. APPLICABILITY OF SECTION 650.0553

■ Section 650.055 refers to individuals convicted of a felony defined as a violent offense under chapter 565, RSMo (and as a sex offense under chapter 566, RSMo). Chapter 565 was amended effective July 1, 1984, which, as we understand Cooper's argument, exempts him from the requirement of providing a DNA sample. Cooper argues that his 1981 conviction was under § 565.004, RSMo 1978, which was common law second degree murder, and therefore, the statute requiring the taking of a blood sample for DNA profiling analysis is not applicable to him. Cooper argues that the statute directing the taking of blood samples, § 650.055, applies only to persons convicted pursuant to the current chapter 565, which would include those crimes of second degree murder committed after July 1, 1984. Thus, Cooper contends that the application of § 650.055 to his conviction would be in violation of the *ex post facto* clause. U.S. CONST. art. I, § 10 and MO. CONST. art. I, § 13.

First, § 650.055 provides for DNA testing on those individuals convicted of violent offenses and draws no distinction between the

original or amended provisions of the statute. Section 565.001 states that the provisions of chapter 565 govern "the construction and procedures for charging, trial, punishment and appellate review of any offense defined in this chapter and committed after July 1, 1984," while the former law governs these matters for offenses committed before that date. Sections 565.001(1) and (2), RSMo 1994.

Cooper was convicted of second degree murder in 1981 under § 565.004, RSMo 1978. Second degree murder is a violent offense under the current chapter 565 and likewise was inherently a violent offense under the pre–1984 chapter 565. *See* § 565.021, RSMo 1994 and § 565.004, RSMo 1978. While the 1984 amendments to chapter 565 govern "the construction and procedures for charging, trial, punishment and appellate review" for the specified offenses, the drawing of a blood sample for DNA profiling analysis under § 650.055 does not implicate these procedures. Second degree murder is a violent offense by definition of either statute. Because Cooper was convicted of a violent offense under chapter 565 and § 650.055 does not involve a procedure affected by the 1984 amendments to chapter 565, he is not exempt from the requirements of providing a DNA blood sample.

■ Finally, § 650.055 does not violate prohibitions against *ex post facto* laws when applied to those convicted before its effective date. The clear purpose of the statute is to identify those individuals that have a higher incident to commit crimes, see *Rise v. Oregon*, 59 F.3d 1556, 1561 (9th Cir.1995), *cert. denied,* — U.S. — , 116 S.Ct. 1554, 134 L.Ed.2d 656 (1996), and not to punish individuals convicted of violent crimes.

## III. CONSTITUTIONALITY OF SECTION 650.055

FOURTH AMENDMENT

■ Cooper argues that requiring a blood sample to be drawn for use in DNA profiling analysis impermissibly infringes on his Fourth Amendment rights. He maintains that taking his blood amounts to an unreasonable search and seizure without the requi-

site probable cause or judicial warrant to justify the intrusion.

■ Taking a blood sample implicates the Fourth Amendment. The relevant test "is whether the [blood] sample gathering is a reasonable search under the circumstances." *Vanderlinden v. Kansas,* 874 F.Supp. 1210, 1214 (D.Kan.1995). "The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure." *Winston v. Lee,* 470 U.S. 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662 (1985). "[T]he state may interfere with an individual's Fourth Amendment interests with less than probable cause and without a warrant if the intrusion is only minimal and is justified by law enforcement purposes." *Rise,* 59 F.3d at 1559.

Minimal intrusion must be justified by valid law enforcement purposes. The blood samples drawn under § 650.055 are used to create a DNA profiling system to assist in the prosecution of violent offenders and sex offenders. Sections 650.050, 650.055, RSMo 1994. In upholding a similar statute in Oregon, the Ninth Circuit stated that there was "uncontroverted evidence documenting the high rates of recidivism among certain types of murderers and sexual offenders, ... [and that] investigations of murders and sexual offenses are more likely to yield the types of evidence from which DNA information can be derived...." *Rise,* 59 F.3d at 1561. Additionally, a DNA data bank advances the public interest in prosecuting crimes accurately because DNA evidence can acquit an accused just as effectively as it can convict him. *Id.* Therefore, § 650.055, which applies only to a limited class of felons, bears a rational relationship to the public's interest in identifying and prosecuting dangerous felons and therefore constitutes a valid law enforcement purpose.

■ The intrusion of the blood test is examined under the lower expectation of privacy granted to a prisoner. The United States Supreme Court has rejected "the requirement of individualized suspicion ... [under the Fourth Amendment] at least in

the context of those persons whose liberty interests have been reduced by their conviction...." *Vanderlinden,* 874 F.Supp. at 1214. The identity of a person convicted of a crime "has become a matter of state interest and he has lost any legitimate expectation of privacy in the identifying information derived from the blood sampling." *Rise,* 59 F.3d at 1560.

The United States Supreme Court has "recognized society's judgment that blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity." *Winston,* 470 U.S. at 762, 105 S.Ct. at 1617. The blood test procedure has become a common, routine occurrence in everyday life. *Schmerber v. California,* 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966); *Breithaupt v. Abram,* 352 U.S. 432, 436, 77 S.Ct. 408, 410, 1 L.Ed.2d 448 (1957). The Supreme Court therefore has held "that a blood test taken by a skilled technician is not such 'conduct that shocks the conscience,' nor such a method of obtaining evidence that it offends a 'sense of justice.'" *Breithaupt,* 352 U.S. at 437, 77 S.Ct. at 411 (citations omitted). Therefore, the drawing of blood under these circumstances does not constitute more than a minimal intrusion upon a prisoner's Fourth Amendment interests.

Because of the reduced expectation of privacy held by prisoners, the minimal intrusion upon a prisoner's Fourth Amendment interests caused by the blood test, the significant interest of the public in preventing recidivism and accurately determining guilt or innocence in cases of violent and sexual offenses, and the likelihood that the DNA profiling system will advance these interests, the drawing of a blood sample under § 650.055 is reasonable and therefore constitutional under the Fourth Amendment. *See Rise,* 59 F.3d at 1562.

■ Cooper also alleges that § 650.055 violates the Fourth and Fourteenth Amendments by impermissibly intruding on his legitimate expectation of privacy. "[I]t is established that the Due Process Clause of the Fourteenth Amendment affords individuals protection from government intrusion on fundamental aspects of personal privacy." *Van-*

*derlinden,* 874 F.Supp. at 1215. However, as already discussed, a prisoner has a diminished expectation of privacy in a search of his body which is outweighed by the compelling interest in law enforcement advanced by § 650.055. *See also id.* Therefore, § 650.055 does not impermissibly infringe on Cooper's privacy interests.

**FIFTH AMENDMENT**

■ Cooper argues that § 650.055, RSMo 1994, violates the Fifth Amendment privilege against self-incrimination by compelling him to be a witness against himself through forcibly taking potentially incriminating evidence from his body. The Fifth Amendment protects "'the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.'" *Schmerber,* 384 U.S. at 760–61, 86 S.Ct. at 1830 (citation omitted).

■ In applying the Fifth Amendment privilege against self-incrimination, the United States Supreme Court has made the distinction between a suspect's communications or testimony and real or physical evidence obtained from the suspect. *Id.* at 764, 86 S.Ct. at 1832. While the Fifth Amendment protects a suspect from being compelled to provide evidence of a testimonial or communicative nature, it does not protect a suspect from being compelled to provide real or physical evidence. *Id.* at 763–64, 86 S.Ct. at 1832. In *Schmerber,* the Supreme Court held that a compelled extraction of a blood sample and its chemical analysis, for blood alcohol content, does not amount to testimonial or communicative evidence and therefore is not prohibited by the Fifth Amendment. *Id.* at 765, 86 S.Ct. at 1832–33. Likewise, the Fifth Amendment privilege against self incrimination is not violated by the taking of blood under § 650.055 for DNA profiling analysis.

**DUE PROCESS CLAUSE**

■ Cooper argues that § 650.055 violates the "substantive component [of the Due Process Clause] that bars certain arbitrary, wrongful government action 'regardless of

the fairness of the procedures used to implement them,'" citing *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). However, relying upon precedent from the United States Supreme Court, the Ninth Circuit observed that despite an individual's lack of an opportunity to object to the procedure, the extraction of blood from an individual in a simple, medically acceptable procedure does not implicate the due process clause. *Rise,* 59 F.3d at 1562–63 (citing *Schmerber,* 384 U.S. at 759–60, 86 S.Ct. at 1829–30 and *Breithaupt,* 352 U.S. at 435, 77 S.Ct. at 410). Similarly, the due process clause is not further implicated by § 650.055 other than in the manner discussed above.

### EX POST FACTO

■ Cooper again raises the *ex post facto* clause, on this occasion arguing that drawing a blood sample violates the prohibition against *ex post facto* laws because it "makes more burdensome the punishment for his crime, deprives [him] of an available defense and takes away substantial rights." However, "[t]he *ex post facto* provision prohibits any law that provides for punishment for an act that was not punishable when it was committed or that imposes an additional punishment to that in effect at the time the act was committed." *Cooper v. Missouri Bd. of Probation & Parole,* 866 S.W.2d 135, 137–38 (Mo. banc 1993), *cert. denied,* 512 U.S. 1225, 114 S.Ct. 2718, 129 L.Ed.2d 843 (1994). A law must have two elements to be *ex post facto:* "it must be retrospective, and it must disadvantage the affected offender." *Id.* at 138.

Because §§ 650.050—650.057 do not amend Missouri's substantive criminal laws, these statutes do not criminalize conduct that was not punishable when it was committed or deprive Cooper of a defense available at the time his crime was committed. *See Rise,* 59 F.3d at 1562. Therefore, § 650.055 will raise "*ex post facto* concerns only if requiring … [Cooper] to submit to a blood sample for a DNA data bank constitutes 'punishment.'" *Id.* "Both federal and state courts have uniformly concluded that statutes which authorize collection of blood specimens to assist in

law enforcement are not penal in nature." *Gilbert v. Peters,* 55 F.3d 237, 238–39 (7th Cir.1995). Section 650.055 furthers a legitimate governmental interest in law enforcement. It is not punitive.

■ However, Cooper also argues that § 650.055 violates the *ex post facto* clause because it takes away substantial rights. The court construes Cooper's argument to allege that § 650.055 violates the *ex post facto* clause because it creates the possibility that prisoners may be punished for refusing to comply and will thereby lose substantial rights. While such punishment may be imposed, "any sanctions would result from an inmate's refusal to comply with valid prison regulations rather than from the commission of the crime for which he was sentenced." *Gilbert,* 55 F.3d at 239. Therefore, neither the taking of the blood sample itself nor the possibility of punishment for refusing to comply violate the prohibition against *ex post facto* punishment.

In conclusion, the taking of a blood sample under § 650.055 does not constitute an unreasonable search and seizure and does not violate protected privacy interests under the Fourth Amendment, the Fifth Amendment privilege against self-incrimination, the due process clause, or the *ex post facto* prohibition.

### IV. SOLITARY CONFINEMENT

Cooper also challenges the constitutionality of his continuing solitary confinement on the basis that such confinement violates § 217.380.2, RSMo 1994. Cooper further argues that his indefinite confinement in administrative segregation is unlawful because there is no punishment specified for refusing to give a blood sample under § 650.055, RSMo 1994, there is no factor or reason to justify such confinement under § 217.375, RSMo 1994, and it violates his right to substantive and procedural due process.

■ Cooper argues that his initial 30–day disciplinary segregation was unlawful under § 217.380.2 because it went beyond the ten-day maximum for a minor rule violation. The records shows that on June 13, 1996, Cooper was released from disciplinary segre-

gation and assigned to administrative segregation. Claims for equitable relief become moot upon a prisoner's release from custody or transfer from the institution in which he suffered the conditions of confinement which formed the basis for the equitable claims. *Green v. White,* 693 F.2d 45, 46 n. 1 (8th Cir.1982), *cert. denied,* 462 U.S. 1111, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). When a petition is moot, the petitioner has failed to present any facts to support his claim. *See Cancel v. Rison,* 985 F.2d 404, 405 (8th Cir. 1993). Because Cooper is no longer in disciplinary segregation, there are no facts to support his claim of unlawful disciplinary segregation under § 217.380.2 as a basis for relief.

Cooper further contends that "[d]espite respondent characterizing solitary confinement as administrative segregation, petitioner is still serving disciplinary segregation for the minor conduct violation." He argues that this continuing segregation therefore also violates the ten-day maximum for a minor rule violation under § 217.380.2. However, as already noted, Cooper was released from disciplinary segregation and assigned to administrative segregation on June 13, 1996, and his claim will be analyzed under the provision for administrative segregation, § 217.375, RSMo 1994.

■ Cooper argues that his continuing and indefinite solitary assignment to administrative segregation is unlawful because there is no punishment specified in § 650.055, RSMo 1994, for refusing to submit a blood sample and there is no justification for his segregation under § 217.375, RSMo 1994. He also claims that his indefinite assignment to administrative segregation violates his right to substantive and procedural due process.

He contends that, because § 650.055, RSMo 1994, does not contain specific language regarding penalty or punishment for

refusing to provide a blood sample, prison authorities have no authority to punish him for not complying with their orders. While the statute does not provide a specific penalty or punishment, it does state that certain convicted felons, such as Cooper, "shall have a blood sample drawn...." As discussed, § 650.055 is constitutionally valid and it applies to Cooper. His assignment to administrative segregation is for disobeying an order. Prison officials can legally implement the blood testing requirement and issue a lawful order to compel prisoners to comply with the statute. *See Ewell v. Murray,* 11 F.3d 482, 487 (4th Cir.1993), *cert. denied,* 511 U.S. 1111, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994); *Sanders v. Coman,* 864 F.Supp. 496, 500 (E.D.N.C.1994). The institution can take corrective action to compel Cooper's compliance with its lawful orders.[2]

Cooper next claims that there is no justification for his continuing administrative segregation under § 217.375, RSMo 1994. However, § 217.375.1 states that a prisoner may be placed in administrative segregation "for the security and good order of the correctional facility,...." " '[T]he preservation of discipline is invoked whenever an inmate is given a lawful order by correctional officials.' " *Sanders,* 864 F.Supp. at 500 (citation omitted). A refusal to obey a lawful order undermines the authority of prison officials and affects the security and good order of the facility. Therefore, Cooper's placement in administrative segregation is appropriate.[3] He is entitled to regular hearings. There is no claim that he has not received those hearings.

■ Cooper's final argument is that his indefinite assignment to administrative segregation violates his right to substantive and procedural due process. The United States Supreme Court has stated that the due process clause does not grant prisoners a right to remain in the general population and

---

2. The recently amended version of § 650.055, now states that "[a]ny person required to provide a DNA sample pursuant to this section shall be required to provide such a sample, *without the right of refusal,....*" 1996 Mo. SB 578, § 650.055.2 (emphasis added).

3. The issues framed in this action do not call upon us to decide whether continued administrative segregation is the proper method of enforcement in light of the recently amended statute which articulates the use of force as may be necessary to insure compliance. 1996 Mo. SB 578, § 650.055.2.

"[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, ——, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995). Therefore, "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301.

To establish a due process violation, a plaintiff must show a deprivation of a liberty or property interest. *Paul v. Davis*, 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). Because Cooper has no liberty interest in remaining in the general prison population and no liberty interest in his assignment to administrative segregation for disciplinary purposes, he has not established a due process violation. Cooper also has received the requisite review hearings under § 217.375.2, RSMo 1994, so he is unable to establish a violation of procedural due process.

## V. CRUEL AND UNUSUAL PUNISHMENT

The basis of Cooper's pleading is that his continuing solitary confinement constitutes cruel and unusual punishment and it violates §§ 217.275 and 217.385(2). This issue was decided in the first part of this opinion when we held that Cooper's writ of *habeas corpus* was not the proper remedy because his petition did not state an action for cruel and unusual punishment, ·which would have afforded him an exception.

To establish that conditions of confinement constitute cruel and unusual punishment, the prisoner must show that the alleged deprivation is sufficiently serious to deny " 'the minimal civilized measure of life's necessities.' " *Farmer v. Brennan*, 511 U.S. at 834, 114 S.Ct. at 1977. Cooper's petition does not successfully establish inhumane conditions which constitute cruel and unusual punishment. The requirement of providing a blood sample for DNA analysis under § 650.055 is constitutionally valid. His administrative segregation for disobeying an order under § 217.375 is also proper, and the issue of his disciplinary segregation under § 217.380.2 is moot. Therefore, Cooper has not established that his continuing segregation for refusing to submit a blood sample results in inhumane conditions constituting cruel and unusual punishment. We find that there are no violations of Cooper's rights and that the state officials may ·require the prisoner to submit to DNA sampling.

This court's July 3, 1996 preliminary writ is quashed.

BRECKENRIDGE, P.J., and SMART, J., concur.