Jeffrey **BALDOCK**, Claimant and Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellee.

and

**Grant's Mechanical, Inc., Respondent.**

Civil No. 960062.

Supreme Court of North Dakota.

Oct. 1, 1996.

Douglas L. Broden, of Broden, Broden & Walker, Devils Lake, for claimant and appellant.

Jacqueline S. Anderson, Special Assistant Attorney General, of Nilles, Hansen & Davies, Ltd., Fargo, for appellee.

MARING, Justice.

Jeffrey Baldock appealed from a district court judgment upholding the denial of additional benefits to Baldock by the North Dakota Workers Compensation Bureau (the Bureau). We hold the 1992 limitations on vocational rehabilitation retraining benefits, under Section 65–05.1–01, N.D.C.C., did not violate Baldock's equal protection rights under the federal or state constitutions. We also hold the Bureau's finding that Baldock's

employer offered him a legitimate post-injury position is supported by a preponderance of the evidence, and we affirm the judgment.

On August 14, 1992, Baldock injured his left knee while working as a heating and air conditioning serviceman for Grant's Mechanical in Fargo. He filed a claim for workers compensation benefits. The Bureau accepted the claim and paid related medical expenses and disability benefits. Baldock's treating physician concluded Baldock could not return to his former job because his injury restricted his ability to climb and lift. Grant Mechanical, working with a vocational specialist, identified a modified position for Baldock doing shop maintenance and inventory control. Baldock concedes this position is within his physical limitations. However, Baldock was earning $432.00 per week before his injury and the new position only pays $280.00 per week. Consequently, Baldock declined the job offer and requested the Bureau to retrain him for a higher paying job. The Bureau refused to provide Baldock occupational retraining and, instead, entered an order awarding him partial disability benefits. Baldock requested reconsideration of the Bureau's order. After a hearing, the Bureau's initial determination was upheld. Baldock appealed to the district court, which upheld the Bureau's order, and Baldock filed this appeal.

Baldock argues the statutory scheme for rehabilitation benefits violates his equal protection rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution [1] and under Article I, Sections 21 and 22, of the North Dako-

ta Constitution.[2] The relevant statutory provisions in effect in 1992 when Baldock was injured are found under Sections 65–05.1–01 [3] and 65–05–10, N.D.C.C.:

*"65–05.1–01. Rehabilitation services.*

\*     \*     \*     \*     \*     \*

"3. It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. 'Substantial gainful employment' means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, medical limitations, age, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical and as nearly as possible to the employee's average weekly earnings at the time of injury, or to seventy-five percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less. The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option under subsection 4 of section 65–05.1–04 which meets this income test.

"4. The first appropriate option among the following, calculated to return the employee to substantial gainful em-

---

1. Section 1 of the Fourteenth Amendment to the United States Constitution provides, in pertinent part:

   *"No State shall* make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor *deny to any person within its jurisdiction the equal protection of the laws."* (Emphasis added.)

2. Art. I, § 21, N.D. Const., provides:

   "No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which

upon the same terms shall not be granted to all citizens."

Art. I, § 22, N.D. Const., provides:

"All laws of a general nature shall have a uniform operation."

3. This statute was amended in 1995 to define substantial gainful employment to mean restoring the injured employee "as nearly as possible to ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state ... whichever is less." The parties agree the 1992 law applies to this case and we, therefore, make no ruling in regard to the 1995 law.

ployment, must be chosen for the employee:

"a. Return to the same position.

"b. Return to a modified position...."

"65–05–10. *Partial disability—Weekly compensation.* If the injury causes temporary partial disability resulting in decrease of earning capacity, the compensation is sixty-six and two-thirds percent of the difference between the injured employee's average weekly wages before the injury and the employee's wage earning capacity after the injury in the same or another employment.

\*   \*   \*   \*   \*   \*

"7. Benefits must be paid during the continuance of partial disability, not to exceed a period of five years...."

The statute expressly declares the purpose of the rehabilitation legislation is to return an injured employee to substantial gainful employment as quickly and with as little retraining as possible. The vocational rehabilitation specialist submitted a plan requiring Baldock to return to work with his former employer in the modified position of shop maintenance and inventory control, which matched Baldock's post injury physical limitations. The plan also awarded Baldock partial disability payments under Section 65–05–10, N.D.C.C. The modified position paid slightly more than seventy-five percent of the state average weekly wage of $270.00 and, therefore, met the statute's goal of returning Baldock to substantial gainful employment. Consequently, the Bureau determined Baldock was not entitled to further vocational retraining services.

■ Baldock argues the statute creates a classification that discriminates against injured workers whose pre-injury earnings exceed seventy-five percent of the state average weekly wage and favors injured workers whose pre-injury earnings are equal to or less than seventy-five percent of the state average weekly wage. Baldock argues the statute's retraining structure unfairly and unconstitutionally returns those lower wage workers, but not the higher wage workers, to their pre-injury earning capacity. Baldock concedes the statutory scheme is designed "to soften the blow" to higher wage workers by paying them partial disability benefits equal to two-thirds of the difference between their pre-injury and post-injury wages. However, he contends those payments, which generally terminate after five years, do not adequately alleviate the discriminatory impact of the statute.

■ All legislative enactments are imbued with a strong presumption of constitutionality, and the presumption is conclusive unless it is clearly shown that the statute contravenes the state or federal constitution. *North Dakota Council of School Adm'rs v. Sinner,* 458 N.W.2d 280 (N.D.1990). It is well settled that a legislative enactment is not unconstitutional merely because it is not all embracing or does not attempt to cure all the evils within its reach. *Patch v. Sebelius,* 320 N.W.2d 511 (N.D.1982). The wisdom, necessity, and expediency of legislation are questions for legislative not judicial determination. *Haney v. North Dakota Workers Compensation Bureau,* 518 N.W.2d 195 (N.D.1994).

■ The Equal Protection Clause of the United State's Constitution does not forbid classifications, but does keep governmental decisionmakers from treating differently persons who are in all relevant respects alike. *NL Indus., Inc. v. North Dakota State Tax Comm'r,* 498 N.W.2d 141, 148 (N.D.1993). Similarly, Article I, Sections 21 and 22 of the North Dakota Constitution, which we have long viewed as providing our state constitutional guarantee of equal protection, do not prohibit legislative classifications or mandate identical treatment of different categories of persons but, rather, subject legislative classifications to different standards of scrutiny, depending upon the right that may be infringed by the challenged classification. *Bismarck Pub. School Dist. No. 1 v. State,* 511 N.W.2d 247, 255–56 (N.D.1994).

■ When a statute is challenged on equal protection grounds we use one of three standards of review depending upon the challenged statutory classification and the right allegedly infringed. *Haney v. North Dakota Workers Compensation Bureau,* 518 N.W.2d

195 (N.D.1994); *Lee v. Job Service North Dakota,* 440 N.W.2d 518 (N.D.1989). In *Gange v. Clerk of Burleigh County Dist. Court,* 429 N.W.2d 429, 433 (N.D.1988), we outlined the standards for judicial scrutiny of equal protection claims under both the federal and state constitutions:

"When a statute is challenged on equal protection grounds, we first locate the appropriate standard of review. We apply strict scrutiny to an inherently suspect classification or infringement of a fundamental right and strike down the challenged statutory classification 'unless it is shown that the statute promotes a compelling governmental interest and that the distinctions drawn by the law are necessary to further its purpose.' ... When an 'important substantive right' is involved, we apply an intermediate standard of review which requires a '"close correspondence between statutory classification and legislative goals."' ... When no suspect class, fundamental right, or important substantive right is involved, we apply a rational basis standard and sustain the legislative classification unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose." (Citations omitted.)

Baldock argues we should use the intermediate standard of review for his equal protection challenge because: (1) the challenged statute imposes a wealth-based classification, and (2) persons receiving workers compensation benefits are denied access to the courts.

In *State v. Carpenter,* 301 N.W.2d 106 (N.D.1980), this court used an intermediate standard of review to resolve an equal protection challenge against a wealth-based classification under a criminal statute which discriminated against indigents by affording a defense to a criminal charge of issuing checks without sufficient funds on the ability of the defendant to pay the amount of the nonsufficient fund checks. We said "while indigency is not a 'suspect classification' at the present time, we believe that the combination of the classification based upon wealth and the vital interests of [the defendant] at stake in a criminal prosecution require an intermediate standard of review." *Carpen-*

*ter,* 301 N.W.2d at 110. Unlike the criminal statute in *Carpenter* the statutory classification challenged by Baldock does not deny any benefit on the basis of indigency or wealth.

In *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the United States Supreme Court explained that wealth as a classification deserving a higher level of judicial scrutiny than the rational basis test has two distinguishing characteristics: (1) because of impecunity those in the class are unable to pay for a desired benefit, and (2) as a consequence, they incur an absolute deprivation of a meaningful opportunity to enjoy that benefit. Baldock's alleged wealth classification has neither of these characteristics.

The challenged statute, Section 65–05.1–01, N.D.C.C., neither on its face nor in its application treats "poor" persons less favorably than others. To the contrary, persons earning lower wages prior to their injury receive a greater relative benefit than those earning higher wages. More specifically, persons whose preinjury earnings are equal to or less than seventy-five percent of the state average weekly wage are entitled to rehabilitation services to return them to work at their pre-injury earnings. However, for those workers whose pre-injury earnings are greater than seventy-five percent of the state average weekly wage, the authorized rehabilitation services, while returning them to a job paying seventy-five percent of the state average weekly wage, will not necessarily return them to their pre-injury earnings. Baldock has cited no authority for his proposition, implicit in his argument for an intermediate standard of review, that legislation providing a proportionately *greater benefit* to the "poor" or to low wage workers constitutes a wealth-based classification justifying an elevated scrutiny. We conclude the classification is not wealth based so as to warrant an intermediate standard of review for this equal protection challenge.

■ In addition, Baldock asserts an intermediate level of review is appropriate because persons receiving workers compensation benefits are denied access to the courts. In *Hanson v. Williams County,* 389 N.W.2d

319 (N.D.1986), we concluded the right to recover for personal injuries is an important substantive right, and we used an intermediate standard of review for an equal protection challenge to a statute of repose which precluded an injured party from seeking redress in the courts after a specified lapse of time. Reviewing an equal protection challenge of a similar statute in *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733 (N.D.1988), we again used an intermediate standard of review. However, the alleged denial of access to the courts in this case is clearly distinguishable from the denial of court access in *Hanson* and *Bellemare.*

The very purpose of the workers compensation statutes is to provide an injured worker with "sure and certain relief ... regardless of questions of fault" in exchange for which the injured worker gives up the right to sue for damages arising out of a work-related injury, based upon fault principles, against the employer in a court. Section 65–01–01, N.D.C.C.; *see also Haney v. North Dakota Workers Compensation Bureau,* 518 N.W.2d 195 (N.D.1994). Here, Baldock is entitled to, and has received, statutory benefits to compensate his injury, whereas the injured parties in *Hanson* and *Bellemare* were denied a remedy in the courts under the statutes of repose without receiving any substitute statutory remedy or compensation in lieu of the right to sue. Under these circumstances, we are unpersuaded Baldock is entitled to a heightened level of scrutiny for his equal protection challenge.

██ Baldock claims the statute's distribution of rehabilitation and retraining benefits treats one class of workers more fairly than another. His challenge is to workers compensation law which this court has held "'fall(s) within "the field of social welfare and economics"'" which we have consistently deferred to legislative determinations and have applied a mere rational basis level of scrutiny. *Haney v. North Dakota Workers Compensation Bureau,* 518 N.W.2d 195, 199 (N.D.1994). *See also State ex rel Blanken-*

*ship v. Richardson,* —— W.Va. ——, 474 S.E.2d 906 (1996); *Christie v. Coors Transp. Co.,* 919 P.2d 857, 861 (Colo.App.1995); *Harris v. State Dep't of Labor and Indus.,* 120 Wash.2d 461, 843 P.2d 1056, 1064 (Wash. 1993); *Otto v. Hahn,* 209 Neb. 114, 306 N.W.2d 587, 592 (1981). We conclude it is appropriate to review Baldock's equal protection challenge using the rational basis standard of review, and we will uphold the statute unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose. For this review, it is not necessary that the Legislature have articulated the purpose or rationale supporting the classification, providing there is an identifiable purpose which the Legislature may have reasonably considered in adopting the classification. *NL Indus., Inc. v. North Dakota State Tax Comm'r,* 498 N.W.2d 141, 149 (N.D.1993).

It is not difficult to articulate legitimate governmental purposes for the Legislature's decision to limit vocational rehabilitation to injured employees unable to return to a job paying at least seventy-five percent of the average weekly state wage. The Legislature has expressly declared its goal of returning workers to the workplace as soon as possible and with a minimum of retraining. Section 65–05.1–01(3), N.D.C.C. Coincidental to that goal, it is proper for the Legislature to strike a balance between providing adequate benefits to injured employees while also maintaining the fiscal soundness of the workers compensation fund and tolerable premium rates for employers. The Legislature could have reasonably recognized there are substantial benefits for the state and the individual worker to return an injured employee to the work force as quickly as possible, even if the employee has not entirely regained his pre-injury earning capacity. Having the worker back on the job contributing in a productive and meaningful way, even at a lower wage, provides real economic, social, and psychological benefit for society and for the individual worker.[4]

---

**4.** The primary goal of the Workers Compensation Act is to relieve injured workers from adverse economic effects caused by disabling work-related injuries. The injured worker bargained away his right to recover for pain and suffering from the employer tortfeasor in exchange for "sure and certain relief," *i.e.,* his wages. When these benefits continue to be eroded and reduced there

Although the rehabilitation limitations may result in some higher wage workers returning to jobs paying less than their pre-injury earnings, the Legislature could have concluded that higher wage earners are more capable of securing disability insurance or setting aside other assets to supplement their earnings in the event of an injury. Furthermore, the statute compensates higher wage workers who are required to return to the work force before regaining their original earning capacity by providing them partial disability payments equal to two-thirds of the difference between their pre-injury and post-injury earnings, for up to five years. Section 65–05–10, N.D.C.C. The effect of the five-year limitation is not under consideration in this case, but the provision of partial disability payments contributes to the rational basis for the law.

We conclude Baldock has failed to demonstrate the challenged statute discriminates in an unconstitutional manner. Further, Baldock has not cited any decision of any state or federal court holding any similar state workers compensation scheme for rehabilitation benefits is an unconstitutional denial of equal protection. We hold that the rehabilitation benefit limitations provided under Section 65–05.1–01, N.D.C.C., of the 1992 workers compensation law are rationally related to legitimate governmental purposes and the challenged statute does not unconstitutionally discriminate against higher wage workers.

■ The Bureau made a specific finding that the modified position offered to Baldock by Grant's Mechanical was a legitimate job. Baldock asserts the finding is not supported by a preponderance of the evidence. He claims the offer of employment for the modified position was "highly suspect" and, with a rate of pay just slightly more than seventy-five percent of the average state wage, was a "make work position designed solely to prevent Mr. Baldock from continuing to collect disability benefits and getting into a two year retraining program."

■ Our review of the Bureau's decision is governed by Section 28–32–19, N.D.C.C. We review the decision of the agency, not the decision of the district court, and we affirm the Bureau's findings of fact unless they are not supported by a preponderance of the evidence. *Symington v. North Dakota Workers Compensation Bureau,* 545 N.W.2d 806 (N.D.1996). In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence we do not make independent findings of fact or substitute our judgment for that of the Bureau; rather, we determine only whether a reasoning mind could have reasonably determined that the Bureau's factual determinations were supported by the evidence. *Nemec v. North Dakota Workers Compensation Bureau,* 543 N.W.2d 233 (N.D.1996); *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D. 1979).

There is evidence in the record from which the Bureau could have reasonably concluded the shop maintenance and inventory position offered to Baldock was created by Grant's Mechanical as a full-time permanent position. There is also evidence that the $7.00 per hour starting pay of the position was one dollar above the employer's minimum starting wage and that the employer envisioned Baldock would eventually be able to assume further duties, at higher pay, which would utilize his previous training as a heating and air conditioning serviceman. We conclude that a reasonable person could have reasonably found that the modified position offered to Baldock is a legitimate position.

The district court judgment, affirming the Bureau's order denying further rehabilitation benefits, is affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

NEUMANN, Justice, concurring.

I agree with the majority's opinion, which I have joined, but I find it necessary to add a

is at some point no longer the economic relief bargained for by the injured workers. At that point the legitimate state interest no longer bears any rational relationship to the legislation. The essence of equal protection is fairness. (*Haney,* 518 N.W.2d at 209, Justice Meschke dissenting).

The goal of fiscal stability of the Fund and the goal of adequate benefits must be balanced. Unless this is done the rationality of a continuation of substantially reduced workers compensation benefits must be reexamined.

thought regarding access to the courts, and the surrender of that important substantive right in return for the promise of "sure and certain relief ... regardless of questions of fault." N.D.C.C. § 65–01–01.

As the majority noted, when this claim arose the goal of rehabilitation was "to restore the employee as soon as practical and as nearly as possible to the employee's average weekly earnings at the time of injury, or to seventy-five percent of the average weekly wage in this state ..., whichever is less." N.D.C.C. § 65–05.1–01(3) (1993). That goal has since been reduced to "ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state ..., whichever is less." N.D.C.C. § 65–05.1–01(3), N.D.C.C. (1995). The policy considerations that must be weighed in balancing the many conflicting interests of those affected by workers compensation laws clearly are matters appropriate for legislative, rather than judicial, determination. Nevertheless, as the rights of employees under the workers compensation laws are reduced, the sureness and the certainty of relief afforded to them are being diluted.

The majority opinion, in its fourth footnote, suggests if such dilution continues, at some point the trade-off of access to the courts in return for a diminished version of sure and certain relief may no longer satisfy a rational basis review by this court. But access to the courts is an important substantive right, and restrictions of such rights are subject to a more rigorous level of scrutiny by our court. *Hanson v. Williams County,* 389 N.W.2d 319 (N.D.1986); *Bismarck Pub. School Dist. No. 1 v. State,* 511 N.W.2d 247 (N.D.1994). "We are unwilling to view human life and safety as simply a matter of economics." *Hanson,* 389 N.W.2d at 325. I would suggest, if the workers compensation benefits given in exchange for the lost important substantive right of access to the courts continue to be reduced, such further reduction should be measured not by the comparatively relaxed rational basis standard of review, but by the considerably more rigorous intermediate level of judicial scrutiny. When access to an important substantive right has

been severely restricted in return for "sure and certain relief regardless of questions of fault," a heightened level of scrutiny is justified to ensure employees continue to receive the benefit of the bargain imposed on them.

MESCHKE, J., concurs.