1998 ND 154

**Margaret EAGLE, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.**

**Civil No. 980049.**

Supreme Court of North Dakota.

Aug. 18, 1998.

Douglas L. Broden, of Broden, Broden & Walker, Devils Lake, for claimant and appellant.

Douglas W. Gigler, Special Assistant Attorney General, Fargo, for appellee.

NEUMANN, Justice.

[¶ 1] Margaret Eagle appealed from a district court judgment affirming a North Dakota Workers Compensation Bureau order awarding her rehabilitation benefits under N.D.C.C. ch. 65–05.1. We review the limitations on vocational rehabilitation in N.D.C.C. §§ 65–05.1–01(3) and 65–05.1–06.1(2)(i)(1) under the rational basis standard of review, and we hold those limitations do not violate the equal protection clauses of the federal and state constitutions. We affirm.

[¶ 2] In August 1992, while employed at Sioux Manufacturing in Fort Totten, North Dakota, Eagle suffered a work-related injury diagnosed as left "dorsal wrist syndrome." The Bureau accepted Eagle's claim for benefits and began paying associated medical expenses and disability benefits. In July 1993, the Bureau initiated vocational rehabilitation services for Eagle under N.D.C.C. ch. 65–05.1. A vocational consultant's report identified "[s]hort-term retraining of fifty-two weeks or less" as the first appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4).[1] The report concluded the most viable

---

1. N.D.C.C. § 65–05.1–01(4) provides:
   The first appropriate [rehabilitation] option among the following, calculated to return the employee to substantial gainful employment, must be chosen for the employee:
   a. Return to the same position.

means of returning Eagle to physically appropriate employment was a one-year training program as an eligibility technician at UND–Lake Region.

[¶ 3] The Bureau approved the rehabilitation plan, and Eagle began classes in the eligibility technician program in August 1994. Her father passed away in September 1994, and she inherited his grocery store in St. Michael, North Dakota. Eagle began managing the store, but continued the rehabilitation program. After graduation in May 1995, Eagle did not seek employment as an eligibility technician, but continued working at the store.

[¶ 4] The Bureau notified Eagle her temporary partial disability benefits were being discontinued because she had completed the retraining program. She then became eligible for partial disability benefits for one year under N.D.C.C. § 65–05.1–06.1(2)(i). The Bureau discontinued Eagle's partial disability benefits after one year.

[¶ 5] Meanwhile, Eagle requested a rehearing of the Bureau's order awarding her rehabilitation benefits. An administrative law judge recommended affirming the Bureau's order, and the Bureau adopted the recommendation. The district court affirmed the Bureau's decision, and Eagle appealed.

[¶ 6] Eagle asserts the limitations on rehabilitation benefits in N.D.C.C. §§ 65–05.1–01(3) and 65–05.1–06.1(2)(i)(1), violate her equal protection rights under the Fourteenth Amendment of the United States Constitution and N.D. Const. art. I, §§ 21 and 22, and also deny her access to the courts in violation of N.D. Const. art. I, § 9.

[¶ 7] Before addressing Eagle's argument, we outline the relevant statutory provisions for vocational rehabilitation. The goal of vocational rehabilitation is to return an injured employee to substantial gainful employment with a minimum of retraining as soon as possible after an injury. N.D.C.C. § 65–05.1–01(3). The applicable iteration of N.D.C.C. § 65–05.1–01(3) defines substantial gainful employment as bona fide work for remuneration as near as possible to the employee's average weekly earnings at the time of the injury, or seventy-five percent of the average weekly wage in the state, whichever is less.[2] Under N.D.C.C. §§ 65–05.1–02 and 65–05.1–02.1, a vocational consultant prepares a report identifying the first appropriate rehabilitation option following the priorities listed in N.D.C.C. § 65–05.1–01(4). *See* n. 1. As relevant to this case, N.D.C.C. § 65–05.1–06.1 authorizes partial disability benefits for up to five years for injured employees returning to the same or a modified position

b. Return to a modified position.
c. Return to a related occupation in the local job pool which is suited to the employee's education, experience, and marketable skills.
d. Return to a related occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.
e. On-the-job training.
f. Short-term retraining of fifty-two weeks or less.
g. Long-term retraining of one hundred four weeks or less.
h. Self-employment.

2. When Eagle was injured, N.D.C.C. § 65–05.1–01(3) provided:

3. It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. "Substantial gainful employment" means bona fide work, for remuneration, which is reasonably attainable in light of the

individual's injury, medical limitations, age, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical and as nearly as possible to the employee's average weekly earnings at the time of injury, or to seventy-five percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less. The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option under subsection 4 of section 65–05.1–04 which meets this income test.

Section 65–05.1–01(3), N.D.C.C., was amended by 1995 N.D. Sess. Laws ch. 628, § 2, and now defines substantial gainful employment as "ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state ... whichever is less." *See Baldock v. North Dakota Workers Comp. Bureau*, 554 N.W.2d 441, 448 (N.D.1996) (Neumann, J., concurring).

and for one year for employees completing a rehabilitation program.[3]

[¶ 8] Eagle bases her equal protection claim on two separate alleged discriminatory classifications. First, she asserts N.D.C.C. § 65–05.1–01(3) discriminates against injured workers who earned more than seventy-five percent of the average weekly wage in the State prior to their work injury, because it does not return those workers to their pre-injury wage while it returns workers who made less than seventy-five percent of the average weekly wage to their pre-injury wage. Second, she contends N.D.C.C. § 65–05.1–06.1(2)(i)(1) discriminates against injured workers who have completed a retraining program, because it limits their partial disability benefits to one year while it allows workers who return to the same, modified, or related positions to get partial disability benefits for up to five years. *See* N.D.C.C. §§ 65–05.1–06.1(3) and 65–05–10(7).

■ [¶ 9] The equal protection clauses of the state and federal constitutions do not prohibit legislative classifications or mandate identical treatment of different categories of people. *E.g., Baldock v. North Dakota Workers Comp. Bureau,* 554 N.W.2d 441, 444 (N.D.1996). Rather, legislative classifications are subject to different standards of scrutiny, depending upon the right infringed by the challenged classification. *Id.* In *Baldock,* at 445, we quoted *Gange v. Clerk of Burleigh Cty. Dist. Ct.,* 429 N.W.2d 429, 433 (N.D.1988), for the three standards of judicial review of equal protection claims:

"When a statute is challenged on equal protection grounds, we first locate the appropriate standard of review. We apply strict scrutiny to an inherently suspect classification or infringement of a fundamental right and strike down the challenged statutory classification 'unless it is shown that the statute promotes a compelling governmental interest and that the distinctions drawn by the law are necessary to further its purpose.' ... When an 'important substantive right' is involved, we apply an intermediate standard of review which requires a ' "close correspondence between statutory classification and legislative goals." ' ... When no suspect class, fundamental right, or important substantive right is involved, we apply a rational basis standard and sustain the legislative classification unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose."

[¶ 10] In *Baldock,* at 446, we considered an equal protection challenge to the seventy-five percent income classification in N.D.C.C. § 65–05.1–01(3). There, the employee argued the intermediate standard of review applied to his equal protection challenge, because the statute imposed a wealth-based classification and claimants receiving workers compensation benefits were denied access to the courts. We rejected the employee's implicit argument "that legislation providing a proportionately *greater benefit* to the 'poor' or to low wage workers constitutes a wealth-based classification justifying an elevated scrutiny." *Baldock,* at 445. We also reject-

---

3. Section 65–05.1–06.1, N.D.C.C., provides:

2. If the appropriate priority option is short-term or long-term training, the vocational rehabilitation award must be within the following terms:

\*   \*   \*   \*   \*   \*

i. If the employee successfully concludes the rehabilitation program, the employee remains eligible to receive partial disability benefits, as follows:
(1) Beginning the date at which the employee completes retraining, until the employee acquires and performs substantial gainful employment, the partial disability benefit is sixty-six and two-thirds percent of the difference between the injured employee's average weekly wages before the injury, and the em-

ployee's wage-earning capacity after retraining, as measured by the average wage in the employee's occupation, according to criteria established by job service North Dakota in its statewide labor market survey, or such other criteria the bureau, in its sole discretion, deems appropriate. The average weekly wage must be determined on the date the employee completes retraining. The benefit continues until the employee acquires substantial gainful employment, but in no case may exceed one year in duration.

\*   \*   \*   \*   \*   \*

3. If the appropriate priority option is return to the same or modified position, or to a related position, the bureau shall determine whether the employee is eligible to receive partial disability benefits pursuant to section 65–05–10.

ed the employee's argument for heightened scrutiny under the access-to-the-courts provision, because the employee received statutory benefits for his injury and was not denied access to the courts without receiving a substitute statutory remedy. *Id.* at 446. We concluded the employee's challenge fell within the field of social welfare and economics, and we applied the rational basis standard of review to his equal protection challenge. *Id.*

[¶ 11] In *Baldock*, at 446–47 (footnote omitted), we ruled the income classification under N.D.C.C. § 65–05.1–01(3) was rationally related to legitimate governmental purposes and did not unconstitutionally discriminate against higher wage workers:

It is not difficult to articulate legitimate governmental purposes for the Legislature's decision to limit vocational rehabilitation to injured employees unable to return to a job paying at least seventy-five percent of the average weekly state wage. The Legislature has expressly declared its goal of returning workers to the workplace as soon as possible and with a minimum of retraining. Section 65–05.1–01(3), N.D.C.C. Coincidental to that goal, it is proper for the Legislature to strike a balance between providing adequate benefits to injured employees while also maintaining the fiscal soundness of the workers compensation fund and tolerable premium rates for employers. The Legislature could have reasonably recognized there are substantial benefits for the state and the individual worker to return an injured employee to the work force as quickly as possible, even if the employee has not entirely regained his pre-injury earning capacity. Having the worker back on the job contributing in a productive and meaningful way, even at a lower wage, provides real economic, social, and psychological benefit for society and for the individual worker.

Although the rehabilitation limitations may result in some higher wage workers returning to jobs paying less than their pre-injury earnings, the Legislature could have concluded that higher wage earners are more capable of securing disability insurance or setting aside other assets to supplement their earnings in the event of an injury. Furthermore, the statute compensates higher wage workers who are required to return to the work force before regaining their original earning capacity by providing them partial disability payments equal to two-thirds of the difference between their pre-injury and post-injury earnings, for up to five years. Section 65–05–10, N.D.C.C. The effect of the five-year limitation is not under consideration in this case, but the provision of partial disability payments contributes to the rational basis for the law.

[¶ 12] In *Baldock*, the injured worker did not receive retraining and was eligible for partial disability benefits for five years under N.D.C.C. §§ 65–05.1–06.1(3) and 65–05–10(7). Here, because Eagle received retraining, she was entitled to partial disability benefits for up to one year under N.D.C.C. § 65–05.1–06.1(2)(i)(1). Relying on a concurrence in *Baldock*, Eagle asserts workers' rights to benefits have become so eroded that workers compensation benefits no longer constitute the necessary quid pro quo justifying the forced relinquishment of her access to the courts under N.D. Const. art. I, § 9. She asks us to either overrule *Baldock*, or review her equal protection challenge under the intermediate level of scrutiny.

[¶ 13] We decline Eagle's invitation to overrule *Baldock*, and we adhere to our decision applying the rational basis standard of review to an equal protection challenge to N.D.C.C. § 65–05.1–01(3). We recognize the Legislature has reduced benefits for injured workers. *See Baldock*, at 446–47 n. 4 (recognizing unless goals of fiscal stability of fund and adequate benefits are balanced, the rationality of a continuation of substantially reduced benefits must be reexamined). *Baldock* is a clear cautionary flag against the constant erosion of workers' benefits provided in exchange for the right of access to the courts. However, we are not persuaded the difference in duration of disability benefits under N.D.C.C. § 65–05.1–06.1 constitutes a denial of access to the courts without a substitute statutory remedy and requires a different level of scrutiny than *Baldock*. Under *Baldock*, at 446, we conclude both of Eagle's challenged classifications fall within the field of social welfare and economics for which we have consistently deferred to legislative de-

terminations and applied a rational basis level of scrutiny. *See Haney v. North Dakota Workers Comp. Bureau*, 518 N.W.2d 195, 199–200 (N.D.1994). We conclude the rational basis standard of review applies to Eagle's claimed discriminatory classifications.

[¶ 14] Economic or social laws do not violate the equal protection clause merely because, in practice, they may result in some inequality. *NL Industries v. State Tax Commissioner*, 498 N.W.2d 141, 149 (N.D. 1993). Under the rational basis standard of review, it is not necessary for the Legislature to articulate the purpose or rationale supporting a classification, providing there is an identifiable purpose which the Legislature may have reasonably considered in adopting the classification. *Baldock*, at 446.

[¶ 15] As in *Baldock*, at 446–47, we conclude the seventy-five percent income limitation for returning injured workers to substantial gainful employment in N.D.C.C. § 65–05.1–01(3) is rationally related to legitimate governmental purposes. We also conclude the different caps for partial disability benefits are rationally related to legitimate governmental purposes. In 1991, the Legislature reduced the cap on partial disability benefits after retraining from five years to one year. 1991 N.D. Sess. Laws ch. 714, § 59. The legislative history for the reduction says "that benefits should be concentrated in the area of the most need, and workers who have been retrained have received rehabilitation of earnings as best the system can provide." *Hearing on S.B. 2254 Before the Senate Judiciary Comm.*, 52nd N.D. Legis. Sess. (Feb. 4, 1991) (written testimony of Dean J. Haas, counsel for Workers Compensation Bureau). The schedule for partial disability benefits available in N.D.C.C. ch. 65–05.1 provides a perverse incentive to retrain injured employees and then pay them only one year of partial disability benefits. However, the Legislature reasonably could have concluded that workers who receive vocational retraining might acquire enhanced skills, enabling them to obtain better-paying jobs than injured workers who return to the same or a modified position. The Legislature reasonably could have concluded retrained employees not only should find employment in the field for which they were trained within one year after completing the retraining program, but also may earn an amount near their pre-injury salary. It is not irrational for the Legislature to conclude retrained employees would not require the same amount of assistance returning to their pre-injury earning capacities as injured workers who return to modified positions. Workers returning to modified positions may take longer to return to their original earning capacity than a retrained worker who has been trained to perform an occupation within his or her physical limitations.

[¶ 16] We believe these legislative classifications are not patently arbitrary and are rationally related to legitimate governmental purposes. It is well settled that legislative enactments need not attempt to cure all evils within the Legislature's reach, and the wisdom, necessity and expediency of legislation are issues for legislative, not judicial, determination. *Baldock*, at 444. We conclude the rehabilitation limitations under N.D.C.C. §§ 65–05.1–01(3) and 65–05.1–06.1(2)(i)(1) do not violate the equal protection clauses of the state and federal constitutions.

[¶ 17] The judgment is affirmed.

[¶ 18] VANDE WALLE, C.J., MARING, MESCHKE and SANDSTROM, JJ., concur.

