2003 ND 15

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Mark LEPPERT, Defendant and Appellee.**

No. 20020160.

Supreme Court of North Dakota.

Feb. 19, 2003.

Rehearing Denied March 26, 2003.

Jonathan R. Byers (argued), Assistant Attorney General, Bismarck, ND, and Daniel Dean Narum (on brief), State's Attorney, LaMoure, ND, for plaintiff and appellant.

Gary D. Neuharth, Oakes, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] The State appealed an order denying its motion to require Mark Leppert to submit an oral swab under N.D.C.C. § 31–13–03 for a deoxyribonucleic acid ("DNA") sample. We hold 2001 amendments to N.D.C.C. § 31–13–03 authorize DNA testing of persons convicted of certain nonsexual felonies and establish a DNA data base for the test results of persons convicted of those offenses. We hold the amended statute is rationally related to a legitimate purpose and does not violate equal protection. We reverse and remand.

I

[¶ 2] In 1995, the Legislature enacted N.D.C.C. ch. 31–13 to authorize DNA testing and to establish a DNA data base. *See* 1995 N.D. Sess. Laws ch. 325. As origi-

nally enacted, N.D.C.C. § 31–13–03 required DNA testing of persons convicted of certain enumerated sexual offenses or attempted sexual offenses after August 1, 1995, or of persons in the custody of the Department of Corrections and Rehabilitation after that date as a result of a conviction for one of those offenses. Section 31–13–05, N.D.C.C., established a centralized database of DNA identification records for convicted sexual offenders.

[¶ 3] In 1997, Leppert was convicted of felonious restraint under N.D.C.C. § 12.1–18–02, and aggravated assault under N.D.C.C. §§ 12.1–17–02(2) and 12.1–03–01(1), and he was sentenced to the custody of the Department of Corrections and Rehabilitation.

[¶ 4] In 2001, the Legislature amended N.D.C.C. § 31–13–03 to require DNA testing of persons convicted after July 31, 2001 of certain nonsexual felonies, including aggravated assault and felonious restraint, or of persons in the custody of the Department of Corrections and Rehabilitation after that date as a result of a conviction for one of those offenses:

The court shall order any person convicted on or after August 1, 1995, of any sexual offense or attempted sexual offense in violation of sections 12.1–20–03, 12.1–20–03.1, 12.1–20–04, 12.1–20–05, 12.1–20–06, subdivision e or f of subsection 1 of section 12.1–20–07, or section 12.1–20–11 or any other offense when the court finds at sentencing that the person engaged in a nonconsensual sexual act or sexual contact with another person during, in the course of, or as a result of, the offense and any person who is in the custody of the department after July 31, 1995, as a result of a conviction of one of these offenses to have a sample of blood or other body fluids taken by the department for DNA law enforcement identification purposes and inclusion in law enforcement identification data bases. *The court shall order any person convicted after July 31, 2001, of a felony offense contained in chapter 12.1–16, 12.1–17, or 12.1–18, section 12.1–22–01, or chapter 12.1–27.2 and any person who is in the custody of the department afer July 31, 2001, as a result of a conviction for one of these offenses to have a sample of blood or other body fluids taken by the department for DNA law enforcement identification purposes and inclusion in the law enforcement identification data bases.* Notwithstanding any other provision of law, if the sentencing court has not previously ordered a sample of blood or other body fluids to be taken, the court retains jurisdiction and authority to enter an order that the convicted person provide a sample of blood or other body fluids as required by this section. Any person convicted after July 31, 1995, who is not sentenced to a term of confinement shall provide a sample of blood or other body fluids as a condition of the sentence or probation at a time and place specified by the sentencing court. The sentencing court shall assess the cost of the procedure against the person being tested. The department shall collect the cost of the procedure from the person being tested and transfer the amount collected to the state department of health for deposit in the general fund.

(Emphasis added.) However, the 2001 Legislature did not amend N.D.C.C. § 31–13–05 to include in the centralized DNA data base the test results for persons convicted of the additional nonsexual offenses listed in N.D.C.C. § 31–13–03.

[¶ 5] In January 2002, the State sought to require Leppert, who was then in the custody of the Department of Corrections and Rehabilitation as a result of his 1997

convictions for aggravated assault and felonious restraint, to submit a DNA sample by oral swab under the amended version of N.D.C.C. § 31–13–03. Leppert resisted and challenged the constitutionality of N.D.C.C. § 31–13–03 on several grounds, including his right to equal protection. The attorney general moved to intervene to defend the constitutionality of N.D.C.C. § 31–13–03. The trial court granted the attorney general's motion to intervene in a March 15, 2002 memorandum that requested further responses on the equal protection challenge. The court subsequently denied the State's motion to require Leppert to submit to DNA testing, concluding N.D.C.C. § 31–13–03 violated Leppert's equal protection rights under the United States Constitution:

> In the Court's Memorandum dated March 15, 2002, the Court had invited further briefing from the State on the issue of whether N.D.C.C. § 31–13–03 could be applied to this Defendant, on equal protection grounds, when the Defendant was convicted of felonious restraint, a non "sex related crime", and the only statutory purpose set forth for obtaining a DNA sample is to be "... used to assist federal, state, and local criminal justice and law enforcement agencies within and outside the state in the identification or prosecution of sex-related crimes." See N.D.C.C. § 31–13–05 . . . .
>
> For equal protection analysis, in this Memorandum, the Court had asked: "How is a compelling state interest shown, much less a rational basis shown, when the specified statutory purposes for DNA sampling is solely tied to "sex related crimes" and the Defendant has been convicted of a non—"sex related crime"? See *Vanderlinden v. Kansas*, 874 F.Supp. 1210, 1217 (Dist. Kansas 1995) wherein the Court held that the convicted Plaintiffs in that case had a

compelling interest in their bodily integrity/fluids and that the State showed a compelling state interest for need of the DNA samples when the statute was narrowly drawn. No response to this question has been submitted by the State . . .

> In this Memorandum, the Court also noted: "The Attorney General's Brief indicates that the legislative history associated with the expansion, in 2001, of crimes subject to DNA sampling was intended to increase the success rate of solving crimes in and out of state, not just "sex related crimes". However, these legislative intentions were not translated into an expansion of offenses in NDCC § 31–13–05. This statutory purposes section does not provide for any offenses other than "sex related offenses". The Attorney General's Brief . . . indicates: 'However, the legislative history of the 2001 amendment makes it clear that the Legislature intended the statute to apply to other crimes than sex offenses.' However this legislative intention was not translated statutorily and the Attorney General's brief does not explain how legislative intention is valid without statutory enactment. . . .
>
> Whether through inadvertence or otherwise, legislative intentions that are not translated into statutory enactment cannot, for obvious reasons, be given credence. The present language constituting the statutory purpose for DNA sampling in N.D.C.C. 31–13–05 does not match the expansion, in the year 2001, of offenses subject to DNA sampling as set forth in N.D.C.C. § 31–13–03. The rational basis test of equal protection analysis, much less the compelling state interest test, is clearly not met in this case. The Court does not determine which test should apply. As applied to this Defendant, N.D.C.C. § 31–13–03 violates the Defendant's equal protection

rights under the United States Constitution. Because of the disposition made by this Order, the Court does not make any final ruling on the other bases set forth by the Defendant for why he is not subject to DNA sampling requirements.

The State appealed.

## II

[¶ 6] The State argues the 2001 amendments to N.D.C.C. § 31–13–03 do not violate Leppert's equal protection rights. The State argues the rational basis standard of review applies to Leppert's equal protection challenge and an unarticulated legislative purpose may be considered in assessing that challenge. The State argues the 2001 amendments to N.D.C.C. § 31–13–03 are rationally related to a legitimate governmental purpose.

■■■ [¶ 7] The equal protection clauses of the state and federal constitutions do not prohibit legislative classifications or require identical treatment of different groups of people. *Eagle v. North Dakota Workers Comp. Bureau*, 1998 ND 154, ¶ 9, 583 N.W.2d 97. Legislative classifications are subject to different standards of scrutiny, depending on the right infringed by the challenged classification. *Id.* In *Gange v. Clerk of Burleigh County Dist. Court*, 429 N.W.2d 429, 433 (N.D. 1988) (citations omitted) we outlined three levels of judicial scrutiny for reviewing equal protection claims:

> We apply strict scrutiny to an inherently suspect classification or infringement of a fundamental right and strike down the challenged statutory classification "unless it is shown that the statute promotes a compelling governmental interest and that the distinctions drawn by the law are necessary to further its purpose." When an "important substantive right" is involved, we apply an interme-

diate standard of review which requires a " 'close correspondence between statutory classification and legislative goals.' " When no suspect class, fundamental right, or important substantive right is involved, we apply a rational basis standard and sustain the legislative classification unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose.

■■ [¶ 8] Under the federal constitution, unless a statute invokes strict scrutiny because it interferes with a fundamental right or discriminates against a suspect class, the statute will ordinarily survive an equal protection challenge if it is rationally related to a legitimate governmental purpose, and heightened or intermediate scrutiny is generally applied only in cases involving classifications based on sex or illegitimacy. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457–59, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988).

■■ [¶ 9] Here, the trial court decided this issue under the federal constitution, and although Leppert has cited the state constitution, he has not marshalled a separate state constitutional challenge to N.D.C.C. § 31–13–03. *See State v. Stewart*, 1999 ND 154, ¶ 25 n. 8, 598 N.W.2d 773 (limiting analysis to federal constitution where defendant did not marshal separate state constitutional argument). Rather, Leppert argues he has a fundamental right of privacy in his DNA, and the strict scrutiny standard of review applies to his equal protection challenge. We therefore review Leppert's equal protection challenge within the strict scrutiny and rational basis framework.

[¶ 10] Courts have generally upheld DNA testing of convicted persons against various constitutional challenges. *See Roe v. Marcotte*, 193 F.3d 72 (2d Cir.1999); *Boling v. Romer*, 101 F.3d 1336 (10th Cir.

1996); *Rise v. Oregon,* 59 F.3d 1556 (9th Cir.1995); *Jones v. Murray,* 962 F.2d 302 (4th Cir.1992); *Vanderlinden v. Kansas,* 874 F.Supp. 1210 (D.Kan.1995); *Kruger v. Erickson,* 875 F.Supp. 583 (D.Minn.1995); *Ryncarz v. Eikenberry,* 824 F.Supp. 1493 (E.D.Wash.1993); *Matter of Appeal in Maricopa County,* 187 Ariz. 419, 930 P.2d 496 (1996); *L.S. v. State,* 805 So.2d 1004 (Fla.App.2002); *People v. Wealer,* 264 Ill. App.3d 6, 201 Ill.Dec. 697, 636 N.E.2d 1129 (Ill.App.Ct.1994); *Murphy v. Department of Correction,* 429 Mass. 736, 711 N.E.2d 149 (1999); *Landry v. Attorney General,* 429 Mass. 336, 709 N.E.2d 1085 (1999); *Cooper v. Gammon,* 943 S.W.2d 699 (Mo. Ct.App.1997); *Gaines v. Nevada,* 116 Nev. 359, 998 P.2d 166 (2000); *In the Matter of Marcus Orozco,* 129 Or.App. 148, 878 P.2d 432 (1994); *State v. Olivas,* 122 Wash.2d 73, 856 P.2d 1076 (1993). *See generally* Robin Cheryl Miller, Annotation, *Validity, Construction, and Operation of State DNA DATABASE Statutes,* 76 A.L.R. 5th 239 (2000).

[¶ 11] The majority of courts that have considered equal protection challenges to statutes authorizing DNA testing have applied the rational basis standard of review. *See Roe,* 193 F.3d at 82; *Boling,* 101 F.3d at 1341; *L.S.,* 805 So.2d at 1007–08; *Murphy,* 711 N.E.2d at 152–54; *Gaines,* 998 P.2d at 173–74; *Olivas,* 856 P.2d at 1087. Those courts generally have rejected the application of the strict scrutiny test, and they have concluded a convicted person has a diminished expectation of privacy and does not have a fundamental privacy right to be free from DNA testing. *See L.S.,* at 1008; *Murphy,* at 152; *Gaines,* at 174; *Olivas,* at 1087. The courts applying the rational basis test generally have concluded statutes authorizing DNA testing of a class of convicted persons bear a rational relationship to legitimate governmental interests in apprehending and prosecuting repeat sex offenders and other violent offenders. *Roe,* at 82; *Boling,* at 1341; *L.S.,* at 1008; *Murphy,* at 153–54; *Gaines,* at 174; *Olivas,* at 1087.

[¶ 12] The Federal District Court for Kansas, however, has concluded the privacy rights implicated by a DNA testing statute warranted application of strict scrutiny to an equal protection challenge. *Vanderlinden,* 874 F.Supp. at 1217. That court nevertheless concluded the statute did not violate equal protection, because it was narrowly drawn and advanced a compelling state law enforcement interest in identifying recidivists. *Id.*

■ [¶ 13] We agree with the majority of courts that have concluded the rational basis test applies to equal protection challenges to statutes authorizing DNA testing, because convicted persons have a diminished expectation of privacy and do not have a fundamental right to be free from tests for DNA genetic marking. We therefore apply the rational basis test to Leppert's equal protection challenge.

[¶ 14] In concluding N.D.C.C. § 31–13–03 violated Leppert's equal protection rights, the trial court said "the only statutory purpose set forth for obtaining a DNA sample" is described in N.D.C.C. § 31–13–05 to "assist federal, state, and local criminal justice and law enforcement agencies within and outside the state in the identification or prosecution of sex-related crimes," and Leppert was not convicted of a sex-related crime. The trial court concluded "[t]he present language constituting the statutory purpose for DNA sampling in N.D.C.C. 31–13–05 does not match the expansion, in the year 2001, of offenses subject to DNA sampling as set forth in N.D.C.C. § 31–13–03 [and t]he rational basis test of equal protection analysis, much less the compelling state interest test, is clearly not met."

[¶ 15] In *Gaines,* 998 P.2d at 170–71, the Nevada Supreme Court considered a similar statutory amendment that expanded the offenses requiring DNA testing to include nonsexual offenses without a corresponding amendment to the statute requiring inclusion of the test results in a centralized DNA data base. The court rejected a claim that DNA testing did not apply to persons convicted of nonsexual offenses, because the plain language of the statute required DNA testing for nonsexual offenders and the preamble and legislative history reflected a legislative intent to expand the enumerated crimes for DNA testing to nonsexual offenses. *Id.* The court further recognized that although the statute authorizing a central depository was not explicitly expanded to include the test results for those nonsexual offenses, the statute authorizing DNA testing for those offenses required identifying information to be submitted to the central repository for Nevada records of criminal history. *Id.* at 170 n. 2.

[¶ 16] Here, the trial court relied on the incongruity between the 2001 amendment to N.D.C.C. § 31–13–03 and the failure to amend N.D.C.C. § 31–13–05. However, we conclude those statutes, when read together, authorize DNA testing of persons convicted of the enumerated nonsexual felonies and inclusion of those tests results in the centralized DNA data base. We construe statutes as a whole to determine legislative intent, because the law neither does nor requires idle acts. *County of Stutsman v. State Historical Soc'y,* 371 N.W.2d 321, 325 (N.D.1985). We construe statutes to avoid absurd or ludicrous results. *Id.* If a statute is ambiguous or if adherence to the strict letter of a statute would lead to an absurd or ludicrous result, we may resort to extrinsic evidence, including legislative history, to interpret the statute. *Id.* If statutory amendments are enacted in different legislative sessions, the statutes must be harmonized, if possible, so effect may be given to each, but if the amendments are irreconcilable, the later amendment prevails. *See* N.D.C.C. §§ 1–02–08, 1–02–09.1. *See also City of Fargo v. State,* 260 N.W.2d 333, 338 (N.D.1977).

[¶ 17] The 2001 amendments to N.D.C.C. § 31–13–03 specifically authorize DNA testing for certain nonsexual offenses for "DNA law enforcement identification purposes and inclusion in the law enforcement identification data bases." Contrary to our established rules of statutory construction, the 2001 amendments to N.D.C.C. § 31–13–03 would be rendered largely ineffective if those amendments were construed to authorize DNA tests for certain nonsexual offenses, but to preclude those results from being placed in the centralized DNA data base. Although not explicitly articulated in a 2001 amendment to N.D.C.C. § 31–13–05, the legislative history supports the expansion of the centralized DNA data base to include test results for persons convicted of the additional enumerated nonsexual offenses. *See Hearing on H.B. 1208 Before the House Judiciary Comm.,* 57th N.D. Legis. Sess. (Jan. 24, 2001) (testimony of Representative Lawrence R. Klemin). We construe N.D.C.C. ch. 31–13 to authorize DNA tests for persons convicted of the additional enumerated nonsexual offenses and to expand the centralized DNA data base to include those DNA test results.

[¶ 18] We reject the trial court's conclusion the Legislature must explicitly articulate its intent in a statutory enactment to satisfy the rational basis level of review of equal protection claims. *See Baldock v. North Dakota Workers Comp. Bureau,* 554 N.W.2d 441, 446 (N.D. 1996). Under the rational basis test, it is sufficient if the Legislature had any identi-

fiable or conceivable purpose to support a statute. *Kadrmas,* 487 U.S. at 463, 108 S.Ct. 2481; *Baldock,* at 446. Here, the legislative history reflects the Legislature expanded the offenses for DNA testing to include additional violent felonies. *See Hearing on H.B. 1208 Before the House Judiciary Comm.,* 57th N.D. Legis. Sess. (Jan. 24, 2001) (testimony of Representative John Mahoney); *Hearing on H.B. 1208 Before the House Appropriations Comm.,* 57th N.D. Legis. Sess. (Feb. 16, 2001) (testimony of Representative John Mahoney and February 15, 2001, letter from Representative Lawrence R. Klemin). That purpose is rationally related to legitimate government purposes of apprehending and identifying perpetrators of future sex-related and violent crimes, exonerating the innocent, and increasing cost efficiencies. We hold the provisions authorizing DNA testing for nonsexual felonies are rationally related to a legitimate government purpose and satisfy the rational basis standard of review.

[¶ 19] We reverse the district court order and remand for proceedings consistent with this opinion.

[¶ 20]GERALD W. VANDEWALLE, C.J., and DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring in the result.

[¶ 21] I concur in the result. I am of the opinion that N.D.C.C. § 31–13–03 implicates government intrusion on the fundamental right of personal privacy and bodily integrity, and I would apply strict scrutiny to analyze Leppert's claim that the statute denies him equal protection. *See Vanderlinden v. Kansas,* 874 F.Supp. 1210, 1217 (D.Kan.1995), *aff'd sub nom. Schlicher v. Peters,* 103 F.3d 940, 943 (10th Cir.1996) (addressing only the Fourth Amendment and holding no violation occurred). I, however, am of the opinion the state has established that the statute advances a compelling state interest and, therefore, does not violate equal protection. The type of crimes listed by the statute are those with a high likelihood DNA will be left at the scene. The statute focuses on felons who are most likely to recidivate. The DNA database can be used not only to identify perpetrators of crime, but to exonerate persons who have been convicted and who are accused of crimes where DNA is found at the crime scene. Section 31–13–03, N.D.C.C., directs the Department of Corrections to take a sample of blood or other bodily fluids for "DNA law enforcement *identification* purposes." (Emphasis added.) The statute also directs inclusion of the DNA testing results in the "law enforcement *identification* data bases." (Emphasis added.) The statute is narrowly drawn and advances the state's compelling law enforcement interest in identification of perpetrators of crime.

[¶ 22] Finally, I note that Leppert never argued a violation of his Fourth Amendment rights and the majority does not address such a challenge. *Compare United States v. Miles,* 228 F.Supp.2d 1130, 1141 (E.D.Cal.2002) (holding DNA sampling unconstitutional as a violation of the Fourth Amendment right to be free of unreasonable searches and seizures in light of the United States Supreme Court decisions in *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) and *Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001)), *with United States v. Reynard,* 220 F.Supp.2d 1142, 1169 (S.D.Cal.2002) (holding, post *Edmond* and *Ferguson,* DNA sampling does not violate the Fourth Amendment).

[¶ 23]   For these reasons, I concur in the result.