PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 12/2/96**

FOR THE TENTH CIRCUIT

JASON AARON BOLING,
individually and on behalf of others
similarly situated,

        Plaintiff-Appellant,

v.

ROY ROMER, Governor of the State
of Colorado; ARISTEDES ZAVARAS,
Executive Director of DOC; J.
FRANK RICE, Warden of DOC
Diagnostic Unit; CARL W.
WHITESIDE, Director of Colorado
Bureau of Investigation; John or Jane
Doe (1), Clinical Supervisor Medical
Services DRDC; Jane Doe (2),
Clinical Services staff member,
DRDC; Jane Doe (3), Clinical
Services staff member, DRDC; John
Doe (2), Correctional Officer, DRDC,

        Defendants-Appellees.

No. 96-1115

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-Z-306)

Submitted on the briefs:

Jason Aaron Boling, pro se.

Gale A. Norton, Attorney General, Paul S. Sanzo, First Assistant Attorney General, Civil Litigation Section, Denver, Colorado, for Defendants-Appellees Romer, Zavaras and Whiteside.

———————————

Before PORFILIO, LOGAN and BRISCOE, Circuit Judges.

———————————

LOGAN, Circuit Judge.

———————————

Plaintiff Jason Aaron Boling appeals from the district court's order granting summary judgment against him on his 42 U.S.C. §§ 1983, 1985, and 1988 claims.[1] Plaintiff challenged the constitutionality of Colo. Rev. Stat. § 17-2-201(5)(g), which requires inmates convicted of an offense involving a sexual assault to provide the state with DNA samples before their release on parole, and

———————————

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

One defendant, J. Frank Rice, has never been served with the complaint and, therefore, is not a party to this action.

-2-

the Department of Corrections' (DOC) policies implementing that statute.[2]

Plaintiff's principal argument is that the statute violates the Fourth Amendment prohibition against unreasonable searches and seizures. Plaintiff also argues that the statute violates his rights under the Fifth, Eighth, Ninth and Fourteenth Amendments.

Summary judgment is appropriate only if there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Carl v. City of Overland Park, 65 F.3d 866, 868 (10th Cir. 1995). We review the district court's decision de novo and liberally construe plaintiff's pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).[3]

---

[2] Although not asserted as a separate claim for relief, plaintiff argues that the policies adopted by the DOC are inconsistent with the language of Colo. Rev. Stat. § 17-2-201(5)(g). That argument, however, addresses only state law concerns and, therefore, does not support plaintiff's claims for relief under the federal civil rights statutes. Cf. Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995) ("Mere allegations that an official failed to abide by state law will not suffice to state a constitutional claim."); see generally, e.g., Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995) ("Section 1983 created a federal cause of action for damages to vindicate alleged violations of federal law.").

[3] In his reply brief plaintiff asserts for the first time that the district court erred in granting summary judgment before discovery. This court will not address issues raised for the first time in a reply brief. E.g., Codner v. United States, 17 F.3d 1331, 1332 n. 2 (10th Cir. 1994). In any event, plaintiff's argument is foreclosed by his failure to submit to the district court an affidavit, pursuant to Fed. R. Civ. P. 56(f), specifically indicating that he was unable to oppose the summary judgment motion without discovery. See, e.g., International Surplus

(continued...)

I

The Colorado statute provides:

> As a condition of parole, the board shall require any offender convicted of an offense for which the factual basis involved a sexual assault as defined in part 4 of article 3 of title 18, C.R.S., to submit to chemical testing of his blood to determine the genetic markers thereof and to chemical testing of his saliva to determine the secretor status thereof. Such testing shall occur prior to the offender's release from incarceration, and the results thereof shall be filed with and maintained by the Colorado bureau of investigation. The results of such tests shall be furnished to any law enforcement agency upon request.

Colo. Rev. Stat. § 17-2-201(5)(g)(I). The Ninth and Fourth Circuits have addressed Fourth Amendment challenges to similar statutes and concluded that although obtaining blood and/or saliva samples is a search and seizure implicating Fourth Amendment concerns, the ordinary requirements of probable cause and a warrant, or at least a showing of individualized suspicion, are not applicable. See Rise v. Oregon, 59 F.3d 1556 (9th Cir. 1995), cert. denied, 116 S. Ct. 1554 (1996); Jones v. Murray, 962 F.2d 302 (4th Cir.), cert. denied, 506 U.S. 977 (1992).

---

[3](...continued)
Lines Ins. Co. v. Wyoming Coal Ref. Sys., Inc., 52 F.3d 901, 905 (10th Cir. 1995). More important, the issues in this case are legal, not factual; we are satisfied that nothing obtained by further discovery could affect the conclusions we reach on the issues that are presented in this appeal.

In Jones, the Fourth Circuit rejected a Fourth Amendment challenge to a

Virginia statute requiring all convicted felons to submit blood samples for DNA

analysis and inclusion in a data bank for future law enforcement purposes. In

reaching that conclusion, the court determined there is no "per se Fourth

Amendment requirement of probable cause, or even a lesser degree of

individualized suspicion, when government officials conduct a limited search for

the purpose of ascertaining and recording the identity of a person who is lawfully

confined to prison." 962 F.2d at 306. The court relied in part on an inmate's

diminished expectation of privacy in the prison setting.

> [W]hen a suspect is arrested upon probable cause, his identification
> becomes a matter of legitimate state interest and he can hardly claim
> privacy in it. We accept this proposition because the identification
> of suspects is relevant not only to solving the crime for which the
> suspect is arrested, but also for maintaining a permanent record to
> solve other past and future crimes. This becomes readily apparent
> when we consider the universal approbation of "booking" procedures
> that are followed for every suspect arrested for a felony, whether or
> not the proof of a particular suspect's crime will involve the use of
> fingerprint identification. Thus a tax evader is fingerprinted just the
> same as is a burglar. While we do not accept even this small level of
> intrusion for free persons without Fourth Amendment constraint, see
> Davis v. Mississippi, 394 U.S. 721, 727, 89 S. Ct. 1394, 1397, 22
> L.Ed.2d 676 (1969), the same protections do not hold true for those
> lawfully confined to the custody of the state. As with fingerprinting,
> therefore, we find that the Fourth Amendment does not require an
> additional finding of individualized suspicion before blood can be
> taken from incarcerated felons for the purpose of identifying them.

Jones, 962 F.2d at 306-07 (footnote omitted). Weighing the minimal intrusion

caused by the blood test against the government's interest in making a permanent

identification record of convicted felons for the purpose of resolving future crimes, the court determined that DNA sampling was reasonable.

In Rise, the Ninth Circuit upheld a similar but more narrow Oregon statute requiring all inmates convicted of murder or sex offenses, or certain related crimes, to submit DNA samples for inclusion in a data bank.  59 F.3d at 1558-59. The Ninth Circuit first examined the plaintiffs' separate interests in the privacy of the DNA information and their interest in bodily integrity.  Id. at 1559.  The Rise court noted that "[t]he information derived from the blood sample is substantially the same as that derived from fingerprinting--an identifying marker unique to the individual from whom the information is derived."  Id. at 1559.  Noting that "everyday 'booking' procedures routinely require even the merely accused to provide fingerprint identification, regardless of whether the investigation of the crime involves fingerprint evidence," the court concluded that "[o]nce a person is convicted of one of the felonies included as predicate offenses under [the Oregon statute], his identity has become a matter of state interest and he has lost any legitimate expectation of privacy in the identifying information derived from the blood sampling."  Id. at 1560.  The Rise court then found that although obtaining DNA information requires drawing blood as opposed to "inking and rolling a person's fingertips," id., that difference does not render the intrusion on Fourth Amendment interests more than minimal.  Id. (citing Skinner v. Railway Labor

Executives' Ass'n, 489 U.S. 602, 625 (1989) (blood tests do not "infringe significant privacy interests")).

The Rise court then balanced the minimal intrusion on Fourth Amendment interests against the legitimate government interest in identifying and prosecuting murderers and sex offenders, the degree to which gathering the DNA information would advance that interest, "and the severity of the resulting interference with individual liberty." 59 F.3d at 1560. Noting "the public's incontestable interest in preventing recidivism and identifying and prosecuting murderers and sexual offenders, and the likelihood that a DNA bank will advance this interest," the Ninth Circuit concluded that the statute was constitutional. Id. at 1562.

We are persuaded to reach the same result, with respect to the statute at issue here, as our sister circuits. We do not rely on any supposition that sex offenders are more likely to be recidivists than others, nor, as the district court did, on the penological interests within the prison.[4] We do rely upon the specific relevance of DNA evidence to prove sexual assaults. Thus we hold that while obtaining and analyzing the DNA or saliva of an inmate convicted of a sex

_____

[4]     DNA testing, which is admittedly for future law enforcement investigations, is less clearly a legitimate penological concern--that is, a concern addressing the administration and operation of a prison, State ex rel. Juvenile Dep't v. Orozco, 878 P.2d 432, 434-35 (Or. Ct. App. 1994); see Rise, 59 F.3d at 1559 (declining to determine whether obtaining DNA samples from inmates for law enforcement purposes also serves legitimate penological interest).

offense is a search and seizure implicating Fourth Amendment concerns, it is a reasonable search and seizure. This is so in light of an inmate's diminished privacy rights, see Dunn v. White, 880 F.2d 1188, 1195 (10th Cir. 1989) (in upholding AIDS testings against inmates' Fourth Amendment challenge, stating that "plaintiff's privacy expectation in his body is further reduced by his incarceration"), cert. denied, 493 U.S. 1059 (1990); the minimal intrusion of saliva and blood tests; and the legitimate government interest in the investigation and prosecution of unsolved and future criminal acts by the use of DNA in a manner not significantly different from the use of fingerprints.

II

Plaintiff's Fifth Amendment claim, alleging that requiring DNA samples from inmates amounts to compulsory self-incrimination, fails because DNA samples are not testimonial in nature. See Lucero v. Gunter, 17 F.3d 1347, 1350 (10th Cir. 1994) (urine samples used for drug testing not testimonial evidence). Dismissal of plaintiff's Ninth Amendment claim as too vague and conclusory was also appropriate. Equally unpersuasive are plaintiff's arguments that defendants unconstitutionally deprived him of a property interest in his blood without due process or just compensation. See Rise, 59 F.3d at 1562-63 (Due Process Clause does not require hearing before involuntary extraction of blood for DNA sample; when the only requirement for obtaining DNA sample is conviction of predicate

offense, there would be little of substance to contest at hearing); Vanderlinden v. Kansas, 874 F. Supp. 1210, 1216 (D. Kan. 1995) (legislative process in enacting legislation affecting general class satisfies procedural due process to which those members of affected class entitled); cf. Dunn, 880 F.2d at 1198 (where court had approved, in general, blood testing of inmates for AIDS, inmates were not entitled to individual due process hearings).

In addition, because plaintiff does not dispute defendants' assertion that parole in Colorado is discretionary, see generally Mahn v. Gunter, 978 F.2d 599, 600-01 (10th Cir. 1992) (parole for sex offenders, under various Colorado parole schemes, is discretionary), Colo. Rev. Stat. § 17-2-201(5)(g) does not implicate any liberty interest protected by due process by conditioning parole on an inmate's submission of DNA samples. See Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979) (convicted individual has no constitutional right to be conditionally released before expiration of valid sentence); cf. Jones, 962 F.2d at 310 (retroactive application to inmates convicted before passage of statute requiring all inmates to submit DNA samples to extend inmates' incarceration beyond mandatory parole date violated Ex Post Facto Clause).

Plaintiff argues that defendants violated the Eighth Amendment by exposing him to possible physical abuse by indicating, in front of other inmates,

that he had to submit to DNA tests, thus disclosing to those other inmates that plaintiff was a sex offender. Plaintiff's allegations are insufficient to state a valid Eighth Amendment claim. See Riddle v. Mondragon, 83 F.3d 1197, 1204-06 (10th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825 (1994)).

Plaintiff further asserts that taking DNA samples only from inmates convicted of sex offenses deprived him of the equal protection of the laws. There is no equal protection violation. A rational relationship exists between the government's decision to classify inmates as convicted sex offenders and the government's stated objective to investigate and prosecute unsolved and future sex crimes. See Rise, 59 F.3d at 1561 (in addressing Fourth Amendment claim, holding statute's requirement that all inmates convicted of murder or sex offenses submit DNA samples bore rational relationship to public interest in identifying and prosecuting murderers and sex offenders).

Finally, plaintiff's assertion that the state might misuse the information derived from his DNA samples, when he makes no allegations of any specific misuse, fails to state a justiciable controversy. See In re Welfare of Z.P.B., 474 N.W.2d 651, 653-54 (Minn. Ct. App. 1991).

In light of the preceding discussion, the district court did not err in declining to grant plaintiff a preliminary injunction.

AFFIRMED. All pending motions are DENIED as moot.