**Jeffrey Wayne DOLES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 98-273.

Supreme Court of Wyoming.

Dec. 22, 1999.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; T. Alan Elrod, Assistant Appellate Counsel, Cheyenne, Wyoming. Argument by Mr. Elrod.

Representing Appellee: Gay Woodhouse, Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Deputy Attorney General. Argument by Mr. Rehurek.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

GOLDEN, Justice.

In 1997, Wyoming enacted legislation establishing a state deoxyribonucleic acid (DNA) database as part of a DNA Identification Record System. The statutory scheme requires convicted felons to submit DNA samples for identification purposes. Appellant Jeffrey Wayne Doles was convicted of conspiracy to commit larceny and ordered to submit a DNA sample. On appeal, Doles contends the statutory scheme constitutes an unreasonable search, violating the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution.

We hold that legislation establishing Wyoming's DNA Identification Record System is constitutional and affirm the district court's judgment.

## ISSUES

Doles states the issue as:

Does compelling appellant to submit to searches to obtain Appellant's DNA according to Wyo. Stat. §§ 7–19–401 to 7–19–406 violate appellant's rights to be free from unreasonable searches?

The State rephrases the issue as:

Does the compelled submission of DNA samples by convicted felons under Wyo-

ming's DNA Identification Record System, Wyo. Stat. §§ 7–19–401 through 7–19–406, violate the Fourth Amendment to the United States Constitution or Art. 1, § 4 of the Wyoming Constitution?

## FACTS

In 1997, Wyoming passed legislation establishing a state DNA database identification system. Wyo. Stat. Ann. § 7–19–401 through 7–19–406 (LEXIS 1999). Wyoming's Act directs the division of criminal investigation (division) within the office of the Wyoming attorney general to establish a state DNA database for convicted felons, crime scene specimens, and close biological relatives of missing persons. Wyo. Stat. Ann. § 7–19–402(a) (LEXIS 1999). The Act requires that every person convicted of a felony on or after July 1, 1997, and every person who on or after July 1, 1997, is in custody because of a felony conviction, provide a DNA tissue sample. Wyo. Stat. Ann. § 7–19–403(a) (LEXIS 1999).

The Act defines a DNA sample as a human tissue sample containing DNA which may include, but is not limited to, blood, hair, and buccal (saliva) cells. Wyo. Stat. Ann. § 7–19–401(viii)(LEXIS 1999). DNA samples are analyzed to determine identification characteristics specific to the person and stored as a DNA record in the database. Wyo. Stat. Ann. § 7–19–403(a) (LEXIS 1999). The identification information can be accessed by federal, state, and local criminal justice agencies for criminal law enforcement purposes. Wyo. Stat. Ann. § 7–19–404(a), (b) (LEXIS 1999). The database may also be used in developing a DNA population statistics database, and, in the event of a mass disaster, for humanitarian purposes. Wyo. Stat. Ann. § 7–19–404(iii), (iv) (LEXIS 1999). Unauthorized access or accessing the database for impermissible purposes is a criminal offense. Wyo. Stat. Ann. § 7–19–404(d) (LEXIS 1999).

The Act does not specify the method for collecting DNA samples; however, the division is directed to promulgate rules and regulations governing collection and transfer of DNA samples. Wyo. Stat. Ann. § 7–19–403(b) (LEXIS 1999). Reasonable force to secure a DNA sample is authorized, as is expungement of a DNA profile when a conviction is reversed and dismissed. Wyo. Stat. Ann. §§ 7–19–406, –405 (LEXIS 1999).

On March 13, 1998, police arrested Doles and a companion for stealing electronic merchandise from the Wal–Mart store in Gillette, Wyoming. Doles was tried and convicted for conspiracy to commit larceny and appeared for sentencing on August 12, 1998. In addition to imprisonment and a fine, the district court ordered that he supply a DNA sample as required under the Act. The district court entered its order despite Doles' objection that the Act violated the Fourth Amendment's guarantee against unreasonable searches and seizures. This appeal followed.

## DISCUSSION

"The protection afforded by the Fourth Amendment has been defined as the protection of persons from unreasonable government intrusions into their legitimate expectations of privacy." *King v. State,* 780 P.2d 943, 959 (Wyo.1989). This constitutional protection is violated by an unreasonable search and seizure. *Saldana v. State,* 846 P.2d 604, 610 (Wyo.1993); *Pena v. State,* 792 P.2d 1352, 1357 (Wyo.1990). Whether the Act unconstitutionally compels unreasonable searches presents a question of law that we review de novo. *Hall v. State,* 911 P.2d 1364, 1367 (Wyo.1996).

Doles argues that the Act violates his Fourth Amendment right to be free from unreasonable searches and seizures. He contends submitting a DNA sample that does not provide probative evidence connecting a person to a crime is an unreasonable search because it subjects him to a bodily intrusion without probable cause or individualized suspicion that he has engaged in criminal activity. The State recommends that we utilize the approach of the Fourth, Ninth, and Tenth Circuits to address this issue and contends that gathering evidence from "free persons" in order to determine the identity of those responsible for committing unsolved crimes must be distinguished from obtaining the DNA of "convicted felons" whose identity is a matter of legitimate state interest and

who, because of their conviction, have a reduced expectation of privacy in their identifying information.

All fifty states have statutorily established DNA databases. *Landry v. Attorney General,* 429 Mass. 336, 709 N.E.2d 1085, 1087 (1999), *petition for cert. filed,* 68 U.S.L.W. 3153 (U.S. Aug. 20, 1999) (No. 99–359).

> "DNA is the material that determines the genetic characteristics of all living things. The significant feature of DNA for forensic purposes is that, with the exception of identical twins, no two individuals have identical DNA. Furthermore, because DNA does not vary within a particular individual, a DNA molecule found in one cell will be identical to the DNA found in every other cell of that person."

*Springfield v. State,* 860 P.2d 435, 439 (Wyo. 1993). DNA's usefulness in future criminal law investigation is the primary purpose facilitated by DNA databases and has been compared to fingerprinting and other methods of offender identification. *Boling v. Romer,* 101 F.3d 1336, 1339–40 (10th Cir. 1996). The state's interest in DNA permanent identification records of convicted persons has been found comparable to a state's interest in maintaining fingerprint, arrest, and photograph records for identification purposes of suspects arrested upon probable cause. *Landry,* 709 N.E.2d. at 1092; *Jones v. Murray,* 962 F.2d 302, 306 (4th Cir.1992), *cert. denied,* 506 U.S. 977, 113 S.Ct. 472, 121 L.Ed.2d 378 (1992).

 Obtaining a blood or saliva sample is a search and seizure implicating Fourth Amendment privacy rights. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 616, 109 S.Ct. 1402, 1412–13, 103 L.Ed.2d 639 (1989). Relying on *Skinner,* courts have decided that a statutorily mandated submission of a DNA sample for analysis is a search and seizure implicating Fourth Amendment concerns. *Boling* 101 F.3d at 1340; *Rise v. State of Oregon,* 59 F.3d 1556, 1558–59 (9th Cir.1995), *cert. denied,* 517 U.S. 1160, 116 S.Ct. 1554, 134 L.Ed.2d 656 (1996). Also relying upon *Skinner,* we have previously held that urinalysis is a search implicating the Fourth Amendment. *Matter of ALJ,* 836 P.2d 307, 311 (Wyo.1992). We hold that the

Act's demand for a DNA sample is a search and seizure implicating Fourth Amendment privacy rights.

State and federal decisions uphold DNA collection from convicted persons as a reasonable search. *Landry,* 709 N.E.2d at 1092; *Boling,* 101 F.3d at 1340; *Rise,* 59 F.3d at 1562; *Jones,* 962 F.2d at 307–08; *People v. Wealer,* 264 Ill.App.3d 6, 201 Ill.Dec. 697, 636 N.E.2d 1129, 1137 (1994); *State ex rel. Juvenile Dep't of Multnomah County v. Orozco,* 129 Or.App. 148, 878 P.2d 432, 436 (1994) (en banc); *State v. Olivas,* 122 Wash.2d 73, 856 P.2d 1076, 1086 (1993). The federal decisions, *Boling, Rise,* and *Jones,* distinguished between the rights of "free persons" and those in custody, a distinction discussed by the Tenth Circuit, but first made by the Fourth Circuit:

> [T]here is no "per se Fourth Amendment requirement of probable cause, or even a lesser degree of individualized suspicion, when government officials conduct a limited search for the purpose of ascertaining and recording the identity of a person who is lawfully confined to prison.... While we do not accept even this small level of intrusion [obtaining DNA] for free persons without Fourth Amendment constraint, the same protections do not hold true for those lawfully confined to the custody of the state. As with fingerprinting, therefore, we find that the Fourth Amendment does not require an additional finding of individualized suspicion before blood can be taken from incarcerated felons for the purpose of identifying them."

*Boling,* 101 F.3d at 1339 (quoting *Jones,* 962 F.2d at 306–07 (citations omitted)).

The Ninth Circuit also recognized the distinction:

> Although the drawing of blood from free persons generally requires a warrant supported by probable cause to believe that a person has committed a criminal offense and that his blood will reveal evidence relevant to that offense, *see Schmerber [v. California],* 384 U.S. [757] at 768–71, 86 S.Ct. [1826] at 1834–36 [16 L.Ed.2d 908 (1966)]; *United States v. Chapel,* 55 F.3d 1416, 1418–19 (9th Cir.1995) (en banc), the absence of such a warrant does not *a*

*fortiori* establish a violation of the plaintiff's Fourth Amendment rights.... Once a person is convicted of one of the felonies ..., his identity has become a matter of state interest and he has lost any legitimate expectation of privacy in the identifying information derived from the blood sampling.

*Rise*, 59 F.3d at 1560. Similarly, *Boling* decided that the Fourth Amendment did not prohibit collecting DNA from inmates without individualized suspicion. *Boling*, 101 F.3d at 1340. Because blood tests do not "infringe significant privacy interests," the federal courts decided that obtaining DNA information is minimally intrusive. *Id.; Rise*, 59 F.3d at 1560 (citing *Skinner*, 489 U.S. at 625, 109 S.Ct. at 1417-18); *Jones*, 962 F.2d, at 307. Balancing the minimal intrusiveness involved, the legitimate government interest in identification of convicted persons advanced by DNA recordkeeping, and the diminished privacy rights of convicted persons, each of the federal courts determined that the search and seizure was reasonable. *Id.* Using another approach, Washington determined that requiring convicted persons to provide a DNA sample qualified as an exception to the Fourth Amendment warrant requirement, as a search justified by the "special needs beyond normal law enforcement." *Olivas*, 856 P.2d at 1086; *see Landry*, 709 N.E.2d at 1091; *see also Roe v. Marcotte*, 193 F.3d 72, 77 (2nd Cir.1999) (adopting the "special needs" doctrine). *Olivas* compared the "diminished expectation of privacy" approach to the "special needs analysis" approach and determined the latter was the better reasoned. *Olivas*, 856 P.2d at 1086. After a similar comparison, *Landry* reached the opposite conclusion. *Landry*, 709 N.E.2d at 1091-92. We agree with the State that we should utilize the rationale of the *Boling*, *Rise*, and *Jones* decisions to examine whether collecting DNA samples is minimally intrusive, convicted felons have diminished privacy rights, and, for convicted felons, the State has a legitimate interest in establishing permanent identification records by collecting DNA samples.

■ We have previously held that blood testing is of a routine and unobtrusive character, and now extend that holding to decide that collecting DNA samples either from blood, saliva, or hair, through routine, unobtrusive procedures is minimally intrusive. *Van Order v. State*, 600 P.2d 1056, 1059 (Wyo.1979). We have ruled that parolees and juvenile probationers have lesser Fourth Amendment protections than those of law abiding citizens. *Matter of ALJ*, 836 P.2d at 311; *Pena v. State*, 792 P.2d at 1357-58. *ALJ* and *Pena* basically distinguished between the privacy rights of free persons and those whose criminal status diminished their privacy rights, and we extend those holdings and decide that convicted felons have diminished privacy rights. We find that the Act's purpose in collecting DNA identification information is to advance the legitimate state interest in criminal law enforcement. *Boling*, 101 F.3d at 1340. Although collecting DNA samples is a search and seizure, we are persuaded that the Act's mandated DNA collection from convicted felons is reasonable and does not violate the Fourth Amendment. We hold that the Act is constitutional and affirm Doles' sentence.

■ Claiming that Art. 1, § 4 of the Wyoming Constitution provides greater protection than the Federal Constitution on this issue, Doles maintains that a warrant supported by probable cause is needed to extract a DNA sample from a convicted felon. His argument focuses solely on the textual differences between the state and federal provisions to support interpreting the provisions differently. A litigant must provide a "precise, analytically sound approach" when advancing an argument to independently interpret the state constitution. *Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 909 (Wyo.1992). To present proper independent interpretation arguments, we have recommended analyzing factors identified in *State v. Gunwall*, 106 Wash.2d 54, 720 P.2d 808 (1986). *Saldana*, 846 P.2d at 622 (Golden, J., concurring). Although we have not conducted an independent state constitutional analysis on the particular issue that Dole asserts, he fails to provide a *Gunwall* analysis. In other search and seizure contexts, we recently analyzed the protections bestowed by Art. 1, § 4 of the Wyoming Constitution. *Vasquez v. State*, 990 P.2d 476 (Wyo.1999); *Almada v. State*,

No. 98–74, 1999 WL 1318689, 994 P.2d 299 (Wyo. Dec. 21, 1999). The parties involved in *Vasquez* and *Almada* briefed and analyzed *Gunwall's* factors, enabling resolution of the issues through an analytically sound approach. Without proper briefing and argument, we decline to independently analyze the protections offered by the state constitution for the issue asserted by Dole. *Wilson v. State,* 874 P.2d 215, 219 (Wyo.1994).

We affirm the district court's order requiring Doles to submit a DNA sample.