**Reuben JUAREZ, # 248062, Petitioner,**

v.

**Paul RENICO, Respondent.**

**No. 00–10258–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

June 12, 2001.

Ruben Juarez, St. Louis, MI, Pro se.

Vincent J. Leone, Michigan Dept. of Atty. General, Habeas Corpus Division, lansing, MI, for Respondent.

### MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

LAWSON, District Judge.

Petitioner, Reuben Juarez, presently confined at the Mid Michigan Correctional

Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his application, filed *pro se*, petitioner attacks the Michigan Parole Board's denial of his release on parole, resulting in his continued confinement. Petitioner's application does not entitle him to habeas relief and the petition shall be denied with prejudice.

## I.

Petitioner is a prisoner of the State of Michigan. He was initially accused of first-degree sexual conduct, Mich. Comp. Laws § 750.520b(1)(a). It was alleged that petitioner sexually molested and digitally penetrated the five-year-old granddaughter of his girlfriend. Petitioner pleaded guilty to second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a). On February 21, 1996, petitioner was sentenced to a term of four to fifteen years imprisonment for this crime. Petitioner was denied parole release by the Michigan Parole Board on December 21, 1999. The parole board stated that it lacked reasonable assurance

that petitioner would not become a menace to society or to the public safety if he was released on parole. The parole board further stated that reasons supporting its action included the facts that petitioner's crime was an assaultive crime and a sexual assault, that the sexually motivated crime involved a minor family member or acquaintance, and petitioner has a criminal history of violent misdemeanors and a long-standing history of substance abuse. Parole Board Notice of Action at 1.[1]

## II.

Petitioner contends that the decision of the Michigan Parole Board denying him parole release from his sentence deprived him of his right to due process flow and equal protection of the law guaranteed by the Fourteenth Amendment. Petitioner asserts that the appropriate remedy for these claimed violations of his rights is either release on parole within thirty days or a new parole consideration hearing before a neutral and detached parole board.

Petitioner maintains that his right to due process of law was violated because

1. Petitioner was denied parole release on December 21, 1999. Petitioner did not appeal the decision of the parole board to the Michigan courts. Pursuant to Mich. Comp. Laws § 791.234(9), prisoners may no longer appeal the parole consideration decision in state court. In *Caley v. Hudson*, 759 F.Supp. 378, 379–80 (E.D.Mich.1991), the court held that a prisoner challenging his continued confinement for a parole violation had an available state remedy in the form of a state habeas corpus action, despite having forfeited his right to seek review under the Michigan Administrative Procedures Act by failing to timely appeal the Parole Board's ruling. *See also Triplett v. Deputy Warden, Jackson Prison*, 142 Mich.App. 774, 779, 371 N.W.2d 862, 865–66 (1985). "[T]here is no limitation on the time in which a complaint for [Michigan state] habeas corpus must be filed, as long as the prisoner will be in custody at the time the judgment becomes effective." *Caley*, 759 F.Supp. at 380. However, both *Caley* and

*Triplett* concerned parole revocations, not parole consideration decisions. It is unclear whether petitioner may present his claims to the Michigan courts first by filing a complaint for state habeas corpus relief in the circuit court of the county in which he is detained, Mich. Ct. R. 3.303(A)(2), and whether he might renew his request for state habeas relief by "filing an original complaint in the [Michigan] Court of Appeals." *Triplett*, 142 Mich. App. at 780, 371 N.W.2d at 866. If denied relief in the Michigan Court of Appeals, a petitioner may seek discretionary review in the Michigan Supreme Court. Mich. Ct. R. 7.301(A)(2).

Respondent does not contend petitioner has failed to exhaust state court remedies and the habeas statute does not require the exhaustion of meritless claims. 28 U.S.C. § 2254(b)(2). Therefore, this Court shall not require petitioner to make attempts to exhaust in state court the claims now before this Court.

the decision to deny him parole release was made by parole board members who are appointed by the director of the Michigan Department of Corrections (MDOC) and are not within the state civil service provisions. *See* Mich. Comp. Laws § 791.231a(1). Pursuant to Mich. Comp. Laws § 791.231a(2), parole board members are appointed for limited terms of years; a member may be reappointed. Further, the director of the MDOC "may remove a member of the parole board for incompetency, dereliction of duty, malfeasance, misfeasance, or nonfeasance in office." Mich. Comp. Laws § 750.231a(2). Petitioner argues that these provisions subject parole board members to undue pressure to deny parole out of fear of not being reappointed, or of being removed, such that members have a direct, pecuniary interest in issuing parole denials. Petitioner contends that this deprives him of the right to have a "neutral and detached" parole board decide whether to grant or deny parole, thereby denying him due process of law, citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), for support.

Petitioner also contends that as a convicted sex offender he was subjected to an even greater likelihood of parole denial than prisoners convicted of other types of crimes serving similar sentences. Petitioner argues that this special scrutiny deprived him of the equal protection of the law. Respondent replies that 1) because petitioner has no protected liberty interest in parole release, he has no constitutional right to due process in the parole decision-making process and 2) even if it is assumed that sex offenders who have victimized minors are categorically less likely to be granted parole than inmates similarly situated except for their crime of conviction, this would not offend the equal protection clause, because the state has a legitimate interest in more closely scruti-

nizing such prisoners before granting them parole release.

## A.

### 1.

 Petitioner has no constitutional right to be released on parole because there is no constitutional right of a lawfully convicted person to be conditionally released before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 377 n. 8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). Thus, there is no federal constitutional right to parole. *Gavin v. Wells*, 914 F.2d 97, 98 (6th Cir.1990); *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir.1994).

 In Michigan, the decision to release a prisoner on parole is a discretionary decision of the parole board. *In re Parole of Johnson*, 235 Mich.App. 21, 596 N.W.2d 202 (1999)(per curiam)(citing Mich. Comp. Laws § 791.234(6)(d) and 791.234(7)). *See also* Mich. Comp. Laws § 791.234(9). The Michigan parole statute does not create a right to be paroled. *Hurst v. Dep't of Corr. Parole Bd.*, 119 Mich.App. 25, 28–29, 325 N.W.2d 615, 616 (1982). Because the Michigan Parole Board has discretion whether to grant parole, a defendant does not have a protected liberty interest in being released on parole. *Canales v. Gabry*, 844 F.Supp. 1167, 1171 (E.D.Mich. 1994). "[T]he expectancy of release upon parole is not a constitutionally protected interest where the state holds out 'no more than a mere hope that the benefit will be obtained.'" *Wright v. Trammell*, 810 F.2d 589, 590 (6th Cir.1987)(quoting *Greenholtz*, 442 U.S. at 11, 99 S.Ct. 2100). Consequently, petitioner does "not have a sufficient liberty interest in his future parole release to be entitled to due process in his

parole release proceedings." *Sharp v. Leonard,* 611 F.2d 136, 137 (6th Cir.1979). *See also Brown v. Lundgren,* 528 F.2d 1050 (5th Cir.1976)(holding that mere expectation of parole release while still in otherwise lawful custody is not so vested as to result in a grievous loss of a protected liberty interest triggering due process protections, if denied by discretionary parole release decision of United States Board of Parole); *but see Childs v. United States Bd. of Parole,* 511 F.2d 1270 (D.C.Cir.1974)(holding that denial of parole release is equivalent to denial of same conditional liberty at issue in parole revocation proceedings, mandating due process protections in parole consideration proceedings).

Petitioner also contends that parole board members have a pecuniary interest in denying parole requests because members are not protected by civil service rules and risk removal and denial of reappointment by the director of the MDOC if they grant parole requests too freely. Petitioner argues that this undue influence likewise violates due process. However, as noted above, petitioner is not entitled to due process of law in the parole consideration decision. Therefore, petitioner's claim does not entitle him to habeas relief.

2.

Alternatively, if it was determined that petitioner was entitled to due process of law in the parole release decision-making process, his habeas corpus petition must be denied nonetheless because petitioner has not shown that the lack of civil service protection for parole board members deprived petitioner of a "neutral and detached" decision maker.

■ In the parole revocation context, the Supreme Court has stated that due process requires that a neutral and detached decision maker determine whether there was probable cause to believe that the parolee had violated the conditions of his parole. The Supreme Court stated that the requirements of neutrality and detachment are satisfied where "an evaluation of whether reasonable cause exists to believe that conditions of parole have been violated is made by someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation." *Morrissey,* 408 U.S. at 486, 92 S.Ct. 2593. Thus, a decision maker is sufficiently "neutral and detached" in the parole revocation context if he or she is not the same person who has accused the parolee of violating his or her parole. Neutrality and detachment do not require civil service protection, employment by a different agency, a law degree, or election or appointment as a judicial officer. *Id.*

■ The parole consideration process is not perfectly analogous. However, petitioner does not allege that any of the parole board members who denied him parole release were responsible for his arrest or prosecution, or stated *prior* to his parole consideration hearing that they considered him unfit for parole release. Therefore, this Court is not persuaded that petitioner has shown he was deprived of a hearing before a "neutral and detached" decision maker.

"[T]he Supreme Court has held that the Fourteenth Amendment right to due process is certainly compromised where the decision maker has a 'direct, personal, substantial pecuniary interest' in the proceedings." *DePiero v. City of Macedonia,* 180 F.3d 770, 777 (6th Cir.1999)(quoting *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). In *Tumey,* the direct, personal, substantial pecuniary interest in the outcome of the proceedings was cash payments the mayor (who also functioned as a judge) would receive if the

defendant were convicted, but would not receive if the defendant were acquitted. Petitioner cannot show a direct pecuniary interest such as this.

Petitioner speculates that parole board members must deny parole release to at least some applicants who actually should be granted parole release in order to keep their jobs. Petitioner claims that the 1992 amendment to Mich. Comp. Laws § 791.231a compels this conclusion. The legislative amendment removed parole board members from the protection of the State Civil Service Act, and also authorized the director of the Department of Corrections to remove parole board members for "incompetency, dereliction of duty, malfeasance, misfeasance, or nonfeasance in office." Mich. Comp. Laws § 791.231a(2). To conclude from this language that a parole board may be removed as a result of a decision to grant or deny parole in an individual case or class of cases overstates the argument. Further, this claim is too speculative to entitle petitioner to habeas relief. The parole release decision is based on a complex of factors covering *inter alia* psychiatry, criminology, psychology, penology, and human relations.

The parole release decision is a prognostic determination of a prospective parolee's suitability for release and involves the parole board members exercise of discretion. Parole decision-making centers on making a diagnostic and predictive determination with respect to whether the rehabilitation of the prisoner and the welfare of society generally would be best served by granting the prisoner conditional freedom rather than by his continued physical confinement.

Absent substantial evidence of an arbitrary and capricious abuse of discretion amounting to a denial of a constitutional right, and absent evidence of a decision based on an unconstitutional factor such as an applicant's race, sex, religion, or prior exercise of protected constitutional rights, the court should not interfere with the parole board's exercise of its discretion in denying an application for parole. Petitioner pleaded guilty to a sexually assaultive crime in which the victim was a defenseless five-year-old child and was sentenced to four to fifteen years imprisonment under Michigan's indeterminate sentencing scheme. This court is not persuaded that the parole board's denial of parole to petitioner for the reasons stated in its notice of action after his service of his minimum sentence is indicative of an abuse of discretion.

This Court is not persuaded that petitioner was denied due process of law in the parole decision-making process.

### B.

Petitioner contends that he was denied equal protection of the law because he is a member of an identifiable class—sex offenders—whose members are less likely to be released on parole than other prisoners who have committed crimes of a non-sexual nature but which are otherwise comparable in seriousness.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause does not forbid classifications, but simply prevents governmental decision makers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). Generally, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in

some inequality." *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The Supreme Court has held that unless a classification warrants some form of heightened review because it impacts a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest. *See, e.g., Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439–42, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

■ Classifications not involving a suspect or quasi-suspect class or impacting certain fundamental constitutional rights need only be rationally related to a legitimate government goal. *See Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)(applying rational basis test to classification based on nature of offense). The class of which petitioner claims to be a member—sex offenders—is not a suspect or quasi-suspect class. *See Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249 (listing classes receiving heightened scrutiny as race, alienage, national origin, and gender). This classification does not implicate a fundamental constitutional right for which the Supreme Court has granted heightened equal protection scrutiny. *See Chapman*, 500 U.S. at 465, 111 S.Ct. 1919 (applying rational basis test to classification based on nature of offense). This classification, therefore, is subject to the general rule that "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440, 105 S.Ct. 3249 (citing cases). *See also Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997)("If a legislative classification or distinction 'neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end.' ").

■ Under the rational basis test, the parole board need only have a legitimate reason for treating sex offenders differently from those convicted of other crimes when deciding whether to release an inmate on parole. The state argues that it has a legitimate interest in subjecting sex offenders to a more intense examination than other offenders before the decision is made to release these inmates into the community. The Court is persuaded that concerns about recidivism, community safety, the degree of success (and failure) of remedial programs for sex offenders in general and pedophiles in particular,[2] and the consequences to the community of an erroneous decision to release all justify treating sex offenders as a class of parole candidates differently from other potential parolees. Assuming without deciding that the state in fact applies stricter standards to sex offenders who apply for parole, the Court concludes that such practice does not offend the Equal Protection Clause. *Cf. Boling v. Romer*, 101 F.3d 1336, 1341 (10th Cir.1996)(Colorado statute requiring inmates convicted of offense involving sexual assault to provide state with DNA samples before their release on parole did not violate equal protection clause by requiring samples only from inmates convicted of sex offenses; rational relationship existed between state's decision to classify inmates as convicted sex offenders and its stated objective to investigate and prosecute unsolved and future sex crimes).

**2.** Petitioner is, in fact, a sex offender who victimized a child of about five years of age. However, consideration of the age of petitioner's victim is not necessary for the Court's decision.

### III.

Federal habeas corpus relief is not warranted under any theory advanced by petitioner. Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DISMISSED** with prejudice.